NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 09a0076n.06
Filed: January 30, 2009

Nos. 06-4498 and 06-4499

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| ELIE F. ABBOUD | ) | |
| and | ) | |
| MICHEL ABBOUD, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**BEFORE: COLE, CLAY, Circuit Judges; RUSSELL, District Judge**[*]

**RUSSELL, District Judge.** Elie Abboud and Michel Abboud appeal the sentences imposed

on remand after their original sentences were vacated pursuant to *United States v. Booker*, 543 U.S.

220 (2005). At their initial sentencing hearings, the district court sentenced both Defendants to 97

months of imprisonment. On remand, the district court sentenced Michel Abboud to 108 months

in prison; Elie Abboud was sentenced to 121 months in prison. For the reasons set forth below, we

**VACATE** Defendants' sentences and **REMAND** to the district court for resentencing.

_____

[*]The Honorable Thomas B. Russell, United States District Judge for the Western District of
Kentucky, sitting by designation.

# I. BACKGROUND

## A. FACTS

On June 14, 2002, Defendants Michel and Elie Abboud were indicted on twenty-seven counts of bank fraud, one count of conspiracy to commit bank fraud, forty-four counts of money laundering, and one count of conspiracy to commit money laundering. On December 11, 2002, a superseding indictment was returned, adding tax charges for both Defendants and firearm charges against Michel Abboud.

Defendants are brothers who owned various "corner stores" that sold groceries and money orders, and offered check cashing services. Defendants controlled seven or eight bank accounts. At the end of each day, Defendants would take checks drawn from on of their own bank accounts, along with checks received from their customers, and deposit them in a second bank account controlled by Defendants. The checks that were drawn from Defendants' own bank accounts would not have sufficient funds to cover the check. The next day, Defendants would deposit a check from a third bank account they controlled to cover the deficit in the second bank account. This check would also be drawn from a bank account with insufficient funds to cover the check.

Defendants were informed by their banks of their negative account balances. Defendants were also informed that they were engaged in check kiting, and that such conduct was illegal. "Check kiting is a systematic scheme to defraud, whereby nonsufficient checks are traded or cross deposited between two or more checking accounts in order to artificially inflate the bank account balances." *United States v. Abboud*, 438 F.3d 554, 563 n.1 (6th Cir. 2006). "Once bank accounts are artificially inflated, checks that would normally be returned for insufficient funds are, in fact, paid or honored by the issuing bank." *Id.* The check kiting scheme was the basis for Defendants' indictment for bank fraud.

The money laundering charges stemmed from Defendants "bleeding" the kite.  In other words, Defendants used their artificially inflated bank account balances created by the kiting to obtain cash for their check cashing business, make loan payments, and fund their money order account.

The superceding indictment added tax charges to both Defendants and firearms charges to Michel Abboud.  In the tax charges, the government alleged that Elie Abboud failed to file tax returns in 1999 and 2000.  The government alleged that Michel Abboud filed a false tax return in 1999, and failed to file a tax return in 2000.  Michel Abboud was also charged as a felon in possession of firearms.  The district court severed the firearms counts.

In a two-week trial before Judge John M. Manos, Defendants were found guilty of all charges.  Michel Abboud was subsequently found guilty of the firearm charges in a separate trial.  At Defendants' sentencings on July 13, 2004, the district court calculated for both Defendants a base offense level of 30 and a Criminal History Category of I, which yielded a Sentencing Guidelines ("USGG" or "Guidelines") range of 97 to 121 months.  Under the then-mandatory Guidelines, the court sentenced both Defendants to 97 months of imprisonment.

On appeal, this Court upheld Defendants' convictions, but remanded for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005).  On remand, the case was reassigned to Judge John Adams, following the death of Judge Manos.

At the resentencing, the district court found the money laundering Guidelines to be controlling.  As such, the district court determined Michel Abboud's base offense level pursuant to USSG § 2S1.2 (1998).  The base offense level of 17 was increased by nine levels based on the value of funds laundered, USSG § 2S1.1(b)(2)(J); by two levels because the funds laundered were proceeds of a specified unlawful activity, USSG § 2S1.2(b)(1)(B); and by two levels because Michel

was an organizer, leader, manager or supervisor of the criminal activity involving less than five participants, USSG § 3B1.1(c). The district court declined to decrease Michel's offense level based on acceptance of responsibility, USSG § 3E1.1(a). This resulted in an offense level of 30. The district court then found him to have a Criminal History Category of II. The increase in his Criminal History Category from his initial sentencing was based on a state conviction that occurred between the initial sentencing and the resentencing. As a result, his advisory Guidelines range was 108 to 135 months. The district court sentenced him to 108 months in prison.

The district court also found Elie Abboud to have an offense level of 30, using the same reasoning it had employed for Michel Abboud. The district court found that he had a Criminal History Category of I, resulting in a Guidelines range of 97 to 121 months. The district court sentenced him to 121 months in prison, based in part on his failure to file tax returns in the years following his initial sentencing and his failure to cooperate with the probation department's preparation of an updated presentence report.

Defendants timely appealed.

## II. DISCUSSION

### A. Standard of Review

"Post-*Booker*, we review a district court's sentencing determination 'under a deferential abuse-of-discretion standard,' for reasonableness." *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (quoting *Gall v. United States*, --- U.S. ----, 128 S. Ct. 586, 591, 169 L. Ed.2d 445 (2007)). "This review entails a two-step process. The appellate court 'must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately

explain the chosen sentence.'" *United States v. Penson*, 526 F.3d 331, 336 (6th Cir. 2008) (quoting *Gall*, 128 S. Ct. at 597).

"After we have found the district court's sentencing to be procedurally sound, we must 'then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" *United States v. Lalonde*, 509 F.3d 750, 770 (6th Cir. 2007) (citation omitted). "A sentence may be considered substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (internal quotation marks and brackets omitted).

**B.  Reasonableness of Michel Abboud's Sentence**

The first step in procedural reasonableness review consists of ensuring that the district court correctly calculated the applicable guidelines range. *Bolds*, 511 F.3d at 579. "[T]he Guidelines should be the starting point and the initial benchmark" in the district court's sentencing analysis to ensure fair sentencing "administration and to secure nationwide consistency." *Gall*, 128 S. Ct. at 596. "In reviewing the district court's calculation of the Guidelines, we still review the district court's factual findings for clear error and its legal conclusions *de novo*." *Bolds*, 511 F.3d at 579.

**1.  Michel Abboud's Offense Level Calculation**

Michel Abboud first argues that the district court violated his Sixth Amendment rights because his sentence was based on facts not admitted by him or found by a jury. Specifically, he argues that the district court erred by increasing his offense level based on the amount of funds laundered when it was the district court that calculated the amount.

In support of his argument, Defendant refers to *Cunningham v. California*, 547 U.S. 270 (2007). However, this Court has previously held that *Cunningham* did not alter our post-*Booker*

decisions concerning the Sixth Amendment's limitations on a district judge's factfinding authority during sentencing. *United States v. Conatser*, 514 F.3d 508, 527-28 (6th Cir. 2008).

Post-*Booker*, "district judges can find the facts necessary to calculate the appropriate Guidelines range." *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006). In this case, the district court did not mistakenly apply the Guidelines as mandatory. "Where, as here, the district court recognized the advisory nature of the guidelines, the increase in a defendant's sentence based on facts not admitted by the defendant or proven to a jury beyond a reasonable doubt does not violate the Sixth Amendment." *Conatser*, 514 F.3d at 527.

Defendant next argues that the district court erred in its calculation of the amount of funds laundered. The district court calculated the amount of funds laundered to be over $10 million. This is the amount of funds that were "bled" from the kite over the course of the check kiting scheme. Defendants used these funds to operate their business, in effect giving themselves a no-interest loan. This amount is independent from the amount of the bank fraud loss, which was calculated to be $2.3 million at the time the fraud was discovered.

In determining the amount of funds laundered, the district court relied on the amounts contained in the money laundering counts of the indictment. The district court's factual determination is supported by the trial testimony of Special Agent David Morgan, who identified the financial transactions in the money laundering counts, and established that the funds involved were derived from the check kiting scheme. Therefore, the district court was not clearly erroneous in determining the amount of funds laundered.

Defendant further argues that the district court erred in denying Defendant's request for an offense level reduction for acceptance of responsibility. Defendant had the burden of proving acceptance of responsibility by a preponderance of the evidence. *United States v. Gilbert*, 173 F.3d

974, 979 (6th Cir. 1999). The district court's determination that Defendant failed to meet that burden should be reversed "only for clear error, and great deference is afforded the court's determination in light of the credibility issues involved." *Id*. The district court found that Defendant continued to assert his innocence, which did not entitle him to a departure for acceptance of responsibility. Because an expression of innocence is inconsistent with acceptance of responsibility, the district court's determination was not clearly erroneous.

Finally, Defendant argues that the district court erred in denying him a departure under USSG § 5K2.0, for the case being outside of the heartland of the money laundering Guidelines. As part of the Guidelines calculation, the district court must determine whether a departure under Chapter 5 of the Guidelines is appropriate. *United States v. McBride*, 434 F.3d 470, 476 (6th Cir. 2006). This Court has previously held that a district court's decision to deny a Guidelines-based departure is not subject to review in the narrow context of the advisory Guidelines calculation, so long as the district court was aware of its authority to do so. *Id.* In this case it is clear that the district judge was aware of this authority.

Although the district court's denial of the downward departure is not reviewable in the above narrow context, Defendant's sentence remains reviewable for reasonableness. *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007). We are not prevented from reviewing the district court's failure to grant a non-Guidelines variance or the overall reasonableness of his sentence based on the factors set out in 18 U.S.C. § 3553(a). *United States v. Wheaton*, 517 F.3d 350, 370 (6th Cir. 2008). However, the district court's decision to impose a sentence within the advisory Guidelines range is presumptively reasonable, *see United States v. Rita*, 127 S. Ct. 2456, 2469-70 (2007), and because Defendant provides no valid reason to rebut the presumption, his argument is rejected.

Therefore, the district court did not err in determining that Michel Abboud had an offense level of 30.

**2.      Michel Abboud's Criminal History Category**

Defendant next argues that the district court erred in considering his post-sentencing state conviction when determining his Criminal History Category.  On a general remand for resentencing, a district court sentences the defendant *de novo*, "which means that the district court may redo the entire sentencing process including considering new evidence and issues."  *United States v. Moor*, 131 F.3d 595, 597 (6th Cir. 1997).

However, a *Booker* remand is not a general remand.  In *United States v. Worley*, this court held that "because the purpose of a *Booker* remand is to ensure that the defendant's sentence is consistent with the Sixth Amendment, the district court may consider only those facts that existed at the time the defendant was first sentenced."  *United States v. Keller*, 498 F.3d 316, 323 (6th Cir. 2007).

"The goal of the [*Booker*] remand is to determine if, at the time of sentencing, the district judge would have imposed a different sentence in the absence of mandatory guidelines.  Post-sentencing events or conduct simply are not relevant to that inquiry."  *Worley*, 453 F.3d 706, 706 (6th Cir. 2006) (alteration in original).  As such, "the district court [is] not permitted to consider the defendants' post-sentencing conduct for purposes of *Booker* resentencing."  *United States v. Sexton*, 512 F.3d 326, 333 (6th Cir. 2008).

In this case, the order of remand was for resentencing in light of *Booker*.  Such a remand "did not require or permit consideration of factors postdating the original sentencing hearing."  *Worley*, 453 F.3d at 707.  Defendant's state law conviction was not in existence at the time Defendant was

first sentenced. Therefore, it should not be considered for the purpose of determining Defendant's Criminal History Category.

The government argues that the decisions of this Court that have vacated a district court's sentence based on the district court's consideration of post-sentencing conduct have been limited to situations where the district court took the defendant's post-sentencing rehabilitative efforts into account. *See, e.g., Keller*, 498 F.3d at 323. Unlike post-sentencing rehabilitative efforts, which are discouraged from consideration by district courts by a Guidelines policy statement, USSG § 5K2.19, consideration of a defendant's criminal history is properly considered under the Guidelines, USSG § 4A1.2(a)(1).

However, the rationale behind *Worley* is not whether a post-sentencing factor is disfavored by the Guidelines. "*Worley* is predicated . . . on the conclusion that consideration of post-sentencing factors is incompatible with the limited scope of a *Booker* remand, that is, reviewing whether the defendant would have received the same sentence had the Guidelines been advisory, rather than mandatory, at the time of the original sentencing." *United States v. Keller*, 498 F.3d 316, 324 (6th Cir. 2007). To increase a defendant's Guidelines range based on a post-sentencing conviction is inconsistent with this purpose.

The government also argues that the conviction should be taken into account because the conduct underlying the conviction occurred before the original sentencing. However, it was the conviction, not the underlying conduct, that the district court relied on to increase Defendant's Criminal History Category. Therefore, the district court erred in taking Defendant's post-sentencing conviction into account when calculating Defendant's Criminal History Category.

"A remand will not be required, and an error deemed harmless, however, when 'we are certain that . . . any such error did not affect the district court's selection of the sentence imposed.'"

*United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005). However, "it is unclear that an error in determining the Guidelines recommendation can ever be considered harmless post-*Gall*." *United States v. Anderson*, 526 F.3d 319, 330 (6th Cir. 2008). Because the district court began its sentencing analysis from an incorrect benchmark, we cannot find that the district court would have imposed the same sentence had it begun its consideration from the correct Guidelines range. Therefore, we vacate Michel Abboud's sentence, and remand for resentencing.

## C.     Reasonableness of Elie Abboud's Sentence

Defendant Elie Abboud raises the same objections to the district court's calculation of his offense level as Michel Abboud. For the same reasons, the district court did not err in determining that Defendant had an offense level of 30. As Defendant has raised no objections with his Criminal History Category, the district court did not err in determining that Defendant's advisory Guidelines range was 97 to 121 months.

Defendant argues that the district court erred in considering his post-remand conduct in determining an appropriate sentence. In sentencing Defendant, the district court considered Defendant's failure to file tax returns and failure to cooperate with the probation department's preparation of an updated presentence report in determining an appropriate sentence under 18 U.S.C. § 3553(a).

As discussed above, it is inappropriate for a district court to consider a defendant's post-sentencing conduct on a *Booker* remand. Therefore, Defendant's sentence was imposed based on an improper factor, and "it is clear that a 'sentence based on an improper factor fails to achieve the purposes of § 3553(a) and may be unreasonable regardless of length.'" *United States v. Malone*, 503 F.3d 481, 484 (6th Cir. 2007) (citing *United States v. Williams*, 456 F.3d 1353, 1361 (11th Cir. 2006)).

The government argues that under these circumstances we should find an exception to the rule in *Worley* that district courts may not consider a defendant's post-sentencing conduct after a *Booker* remand. In this case, the district court was attempting to verify Defendant's financial condition. The district court was concerned about the inadequacies of Defendant's financial information at the original sentencing hearing. However, the purpose of a *Booker* remand is not to resentence a defendant after obtaining information that would have been relevant at the original sentencing. Instead, it is to determine "whether the defendant would have received the same sentence had the Guidelines been advisory, rather than mandatory, at the time of the original sentencing." *Keller*, 498 F.3d at 324. Obtaining Defendant's financial information, even if relevant, was unnecessary given the nature of a *Booker* remand.

The government argues that Defendant's failure to file a tax return should be allowed to be taken into consideration when resentencing Defendant, because he was convicted of two counts of failure to file an income tax return. The government has made no argument for why the facts of this case should be an exception to the general rule concerning a defendant's post-sentencing conduct, beyond the general assertion that the Defendant allegedly committed a similar act to one that led to his conviction. However, we are unpersuaded that these circumstances are the sort of unusual situation which might justify a district court's consideration of post-sentencing conduct following a *Booker* remand. *United States v. Lloyd*, 498 F.3d 319, 325 (3d Cir. 2006).

Finally, the government argues that the post-sentencing conduct should be taken into account because it occurred while Defendant was free on an appeal bond. However, the post-sentencing conduct considered by the district court was Defendant's failure to cooperate in disclosing his financial information and his failure to file tax returns. Even if a district court could account for defendant's conduct while on an appeal bond in determining a defendant's sentence in some

circumstances, it is not appropriate under the facts of this case. Defendant did not use his freedom while on bond to act in some manner. Instead, the district court considered Defendant's failure to use his freedom while this matter was on appeal to aid the district court in determining Defendant's financial condition. This is not the sort of abuse of trust while free on bond that could potentially justify an exception to *Worley*.

The district court gave great weight to Defendant's post-remand conduct when sentencing Defendant. When discussing Defendant's post-sentencing conduct, the district court noted that "I will consider, of course, in exercising my discretion in imposing a sentence, and I make it very clear that it will be part and parcel of the court's review in this matter." The district court also noted that

> I will consider strongly the conduct of the defendants during the time that they were on bond as it relates to their various financial dealings and . . . lack of candor in disclosing information. And that will be very, very important to the court, as it has been made clear in this pre-sentence report.

Sentences within the Guidelines range are afforded a presumption of reasonableness. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). However, in this case the presumption of reasonableness is rebutted by the district court's strong consideration of an impermissible factor. Because we cannot say that the district court would have given Defendant the same sentence had the district court not strongly considered Defendant's post-sentencing conduct, we must remand this matter to the district court for resentencing.

We have also reviewed Defendant's remaining arguments, and find them to be without merit.

**D.    Remand**

Defendants request that this matter be remanded to a different district judge for resentencing. The mere fact that Defendants received a greater sentence on remand does not lead to any presumption of vindictiveness on the part of Judge Adams. Because Judge Adams was not the

original sentencing judge, he did not have a personal stake in the resentencing, as he was not "asked to do over what [he] thought [he] had already done correctly." *Colten v. Kentucky*, 407 U.S. 104, 117 (1972). Additionally, given the nature of a *Booker* remand, no inference of vindictiveness arises when a district judge exercises his discretion to impose a greater sentence under the now advisory Guidelines. *United States v. Goldberg*, 406 F.3d 891, 894 (7th Cir. 2005).

Our decision today to vacate Defendants' sentences is not based on any finding of bias or prejudice against Defendants on the part of Judge Adams. *Worley*, the decision on which our decision today primarily relies, was issued one day before Judge Adams was assigned Defendants' resentencing, and was never submitted to the district court in the proceedings below. Judge Adams also did not have the benefit of this Court's decisions in *Keller* and *Sexton*, which clarified and reinforced the rationale underlying *Worley*. *Keller* and *Sexton* were not issued until this matter was on appeal and briefing was completed. Because of this, the district court's consideration of Defendants' post-sentencing conduct is not indicative of any animosity Judge Adams had toward Defendants.

There is nothing in the record that gives us any concern that Judge Adams will not give Defendants a fair hearing on remand. Therefore, this matter will be remanded to Judge Adams for resentencing.

## III. CONCLUSION

For the foregoing reasons, we VACATE Defendants' sentences and REMAND to the district court for resentencing.