RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0083p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 08-6025

JONATHAN L. STOUT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 03-10089-001—James D. Todd, District Judge.

Submitted: March 3, 2010

Decided and Filed: March 26, 2010

Before: MARTIN, ROGERS, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

ON BRIEF: Robert C. Brooks, LAW OFFICES, Memphis, Tennessee, for Appellant. Jerry R. Kitchen, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

_____

## OPINION

_____

ROGERS, Circuit Judge. Jonathan Stout appeals his sentence of 300 months' imprisonment for possessing and distributing both crack and powder cocaine. Stout was originally sentenced to 1,200 months' imprisonment, but we vacated Stout's sentence and remanded for resentencing under *Booker*. Because we determined that the district court clearly erred in failing to distinguish between powder cocaine and crack cocaine in calculating Stout's relevant conduct, we also instructed the district court to revisit that issue at the resentencing. On remand, the district court used an additional statement from Stout's

1

co-conspirator made after the original sentencing hearing to establish relevant conduct, and the court sentenced Stout to a below-guidelines sentence of 300 months. Stout argues on appeal that the Government should not have been allowed an opportunity to present additional evidence of relevant conduct because the district court was operating under a limited remand and because the Government had the burden of production and persuasion at the initial sentencing hearing; that the district court erred in basing its relevant conduct determination on the unreliable statements of Stout's co-conspirator and a confidential informant; and that the district court's ruling on Stout's objections to the use of the allegedly unreliable statements failed to meet the requirements of Federal Rule of Criminal Procedure 32(i)(B)(3), which requires a district court to rule on objections to the presentence report. These arguments do not require reversal because the original order from this court remanding the case did not contain any language limiting the district court to the original record, and because the statements upon which the district court relied in determining Stout's relevant conduct were supported by sufficient indicia of reliability.

## I.

After a jury trial, Jonathan L. Stout was found guilty of conspiracy to possess with intent to distribute and distribution of 35.6 grams or more of crack cocaine, aiding and abetting the possession with intent to distribute over 35.6 grams of crack cocaine, and possession with intent to distribute 45.1 grams of crack cocaine. At trial, two witnesses who were familiar with Stout testified against him. One of those witnesses was Jason Turner, Stout's co-conspirator, who had already pleaded guilty at the time of Stout's trial. Tammy Howell, a woman who purchased drugs from Stout and Turner and sometimes cleaned their house in exchange for drugs, also testified.

Howell testified at trial that she had known Stout and Turner for about three or four years and that in the two years before Stout's arrest she had purchased both crack and powder cocaine from Stout and Turner for personal use and for resale. She stated that during this two-year period she would go to Stout's house to purchase cocaine every day, that she usually purchased "two or three eight balls a day maybe," and that she would sometimes clean the house in exchange for drugs. Turner testified that he had been living with Stout prior to the time they were both arrested. Turner also testified that once he began selling

drugs, Stout took him to meet a supplier in Memphis named Taurus, and that the pair would buy between a half-ounce to an ounce of cocaine from Taurus "at least once a week."

Prior to sentencing, the probation officer prepared a presentence report containing information about the relevant conduct in Stout's offense based upon the amount of drugs involved. The PSR contained statements from Turner, Howell, and a post-arrest statement from Stout. The probation officer determined that the statements of Stout and Turner were too vague to determine accurately the total amount of relevant conduct, but the probation officer found that Howell's statement could be used for that purpose. Howell's statement was as follows:

> I, Tammy Howell, started buying cocaine from Mr. Stout about the beginning of the year 2001. I bought just on weekends at first, usually an 8 ball on Friday and Sunday. I got to know him a little better and bought from him on a daily basis. When I first started buying cocaine, I didn't use it. Then I got hooked on it and did not turn a profit any more. The eight balls I bought usually weighed 3.5 grams apiece. I used to clean Stout's house for him and Jason Turner and they would pay me in crack instead of money. I bought 3 - 8 balls a day on average. I spent approximately $500-$600 a day at Stout's house buying crack cocaine for about 1 year. I didn't sell drugs for Stout.

The probation officer used Howell's statement to determine that Howell purchased 10.5 grams of crack cocaine from Stout for a period of 365 days, for a total of 3,832.5 grams. When added to the drugs recovered at the time of arrest, this led to a total marijuana equivalent of 77,462 kilograms. Based upon the relevant conduct determination and several enhancements, the PSR recommended a base offense level of 38. The Government did not file any objections to the PSR. Stout did object to the relevant conduct calculations, and the district court determined that the "testimony of Tammy Howell at the trial did serve as a sufficient basis to allow the probation officer to make the calculation that he made." The court also stated that "it's my judgment that based upon the trial testimony of Ms. Howell, which the jury apparently believed, the calculation on drug quantity is accurate." The district court then sentenced Stout to "the most serious sentence that this court has ever imposed," a sentence of 1,200 months. The judge did note, however, that *Booker* was currently pending before the Supreme Court and the possibility existed that Stout would be entitled to resentencing.

After *Booker*, Stout appealed several aspects of his convictions and his sentence before this court. This court issued an order remanding Stout's case for resentencing based upon the *Booker* issue and the determination of Stout's relevant conduct. After rejecting several of Stout's arguments regarding his conviction, we stated:

> It appears from the record that using Howell's statement to the probation officer or her testimony at trial would result in different calculations for Stout's base offense level. Moreover, it appears that the probation officer assumed that all of the drugs involved in the offense were crack cocaine, which has a substantially higher conversion ratio than powder cocaine. Because Howell testified that she purchased both powder cocaine and crack cocaine from Stout and Turner, the district court's across-the-board use of the higher ratio does not appear to be an appropriate exercise of caution in determining the amount of drugs involved in Stout's offense. Accordingly, the district court clearly erred in determining the quantity of drugs attributable to Stout. Because we are vacating Stout's sentence under *Booker*, see *infra*, the district court should revisit this issue upon resentencing and clarify the basis for its calculations.
>
> Finally, Stout argues that the district court committed plain error in sentencing him in accordance with a mandatory application of the guidelines, citing *Booker*. The government concedes that this court's precedent dictates that Stout's sentence should be vacated and his case remanded for resentencing, and we agree.
>
> For the foregoing reasons, we affirm Stout's convictions, vacate his sentence, and remand this case to the district court for resentencing consistent with this decision and with the Supreme Court's decision in *Booker*.

*United States v. Stout*, No. 05-5093, slip op. at 7-8 (6th Cir. Mar. 26, 2008). Prior to the resentencing hearing, the probation officer prepared several revised presentence reports. In the first two revised reports, the probation officer calculated the relevant conduct based on Tammy Howell's statements and using the same total amount of drugs, but basing the marijuana equivalent of the amount of drugs attributable to Howell's statements on powder cocaine only. The Government objected to the second revised PSR, based on the following additional statement from Turner, given in July of 2008:

> I testified at trial against Jonathan Stout. I went to Memphis, TN, to meet TAURUS to obtain cocaine between approximately February 2003 until I was arrested on October 22, 2003. Jonathan Stout would travel with me to Memphis, TN to obtain cocaine. We would purchase 1/2 oz to 1 oz for $400 to $800 an ounce. At least once a month, we would purchase an ounce of crack cocaine and the other weeks of the month we would purchase 1/2

> ounce of crack cocaine from February, 2003 through October, 2003. Jonathan Stout would also purchase powder cocaine. This statement was written for me by DEA/TFO Terry Hopper. Nothing Follows.

Paragraph 13 of the final PSR also states that in an attempt to clarify this information, the probation officer met with Turner three days after the statement was given, and that Turner then stated that he and Stout purchased one ounce of crack cocaine once per month and that he and Stout purchased one-half ounce of crack cocaine the other three weeks of the month. "Mr. Turner answered affirmatively when asked by [the] presentence writer if, based on his statement, it would be a correct assumption that he (Turner) purchased an average of two and one-half (2-1/2) ounces of crack cocaine per month from TAURUS during the stated time period."

Based upon these statements and Howell's earlier statement, the probation officer calculated the amount of drugs attributable to Stout as 3,324.78 grams of powder cocaine and 552.8 grams of cocaine base, for a marijuana equivalent of 11,721.3 kilograms. The probation officer reached this calculation by using Howell's statement that she purchased three 3.5-gram eight balls per day for 365 days to reach a total of 3,832.5 grams of powder cocaine. The officer then added to this the 45.1 grams of crack cocaine found at the time of Stout's arrest. The officer also calculated, based on Jason Turner's new statements, that an additional 552.82 grams of crack cocaine were attributable to Stout. Because Howell had testified that she purchased both crack and powder cocaine from Stout and Turner, the probation officer then subtracted the amount of crack cocaine from the powder cocaine attributable to Howell's statement to avoid double-counting. This resulted in a total marijuana equivalent of 11,721.3 kilograms of marijuana, resulting in an initial base offense level of 36.

Stout filed objections to the PSR, arguing that the district court should not have relied on the additional evidence because it was the unreliable statement of a co-conspirator given five years after the events in question, and because the remand for resentencing was a limited remand and the Government was entitled to only one opportunity to present evidence of relevant conduct. At the resentencing hearing, the court held that the remand did not limit the Government's ability to present additional evidence. The court stated, "Defendant says the government can't introduce any additional evidence that was not

introduced at the original hearing.  I don't read the remand to be so limited.  . . . The only way for me to revisit the issue of relevant conduct is to consider all the evidence that's available on relevant conduct."

The district court also held that the statements of Tammy Howell and Jason Turner were sufficiently reliable to determine relevant conduct, and that the probation officer correctly determined the amount of drugs attributable to Stout:

> Based on this court's determination concerning the credibility of Mr. Turner and Ms. Howell, the court finds as follows:  that the total amount of drugs purchased, both powder and crack, is properly calculated by the probation officer based upon the testimony of Ms. Howell and Mr. Turner.
> But that is total amount.  The only specific amount of crack about which there's testimony comes from codefendant Turner.  Mr. Turner's testimony is specific enough that the court can conclude, in a cautious calculation, that Mr. Turner was involved in approximately 550 grams of crack cocaine.  So we've got 552 grams of crack based upon his testimony about purchasing an ounce a month and then a half ounce the other three weeks of each month for eight months.
> Now, to be also cautious and to be lenient in the calculation, we have to deduct the crack from the total amount testified about by Ms. Howell. And if we do that, then that leaves everything else to be powder cocaine. And considering that none of the rest of it was crack, the court determines that the probation officer has correctly calculated the relevant conduct based upon the testimony of Ms. Howell and Mr. Turner.
> So to repeat, we get the total amount of drugs from Ms. Howell's testimony buttressed by Mr. Turner's testimony.  We deduct from that the amount of crack that is relatively reliable based upon Mr. Turner's testimony, and that leaves the rest to be powder cocaine.  And under a lenient calculation, the court concludes that that is an appropriate calculation.

Based upon these findings, the court determined that Stout's Guidelines range was 360 months to life.  The court heard from Stout, then announced a sentence of 300 months' imprisonment.  After announcing the sentence, the court asked: "Are there any issues that have been presented that I need to rule on or any issues that have come up that I have not yet addressed?  Mr. Brooks are you aware of any?"  Brooks, who was Stout's counsel, answered, "No, sir."  Stout timely appealed.

**II.**

The district court's consideration of Turner's additional statements did not exceed the scope of the mandate because nothing in our previous order remanding Stout's case for resentencing required that the district court conduct the resentencing on the original record. On the issue of relevant conduct, the order remanding Stout's case to the district court was a general remand because the order did not clearly limit and define the procedures the district court was to follow in revisiting the relevant conduct issue. Under a general remand, the district court is allowed to conduct a de novo resentencing, including the consideration of new evidence and issues. Because the district court here was not constrained by a mandate explicitly limiting its ability to consider new evidence, the district court did not exceed the scope of the mandate in considering the additional statement of Jason Turner at resentencing.

"The basic tenet of the mandate rule is that the district court is bound to the scope of the remand issued by the court of appeals." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). In defining the scope of the mandate, this court generally classifies a remand as either general or limited, and courts of appeals have broad discretion in determining the scope of the mandate. *Id.* "In the absence of an explicit limitation, the remand order is presumptively a general one." *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997). In Stout's previous appeal, this court found two issues warranting remand. First, the court held that "the district court erred in determining the quantity of drugs attributable to Stout. Because we are vacating Stout's sentence under *Booker*, see *infra*, the district court should revisit this issue upon resentencing and clarify the basis for its calculations." *Stout*, No. 05-5093, at 7-8. In the next paragraph, the court stated:

> Finally, Stout argues that the district court committed plain error in sentencing him in accordance with a mandatory application of the guidelines, citing *Booker*. The government concedes that this court's precedent dictates that Stout's sentence should be vacated and his case remanded for resentencing, and we agree.
> For the foregoing reasons, we affirm Stout's convictions, vacate his sentence, and remand this case to the district court for resentencing consistent with this decision and the Supreme Court's decision in *Booker*.

*Id*. at 8. In discussing the issue of relevant conduct, our previous order referred to the remand under *Booker*. The cases from this circuit discussing whether a remand under

*Booker* constitutes a general or a limited remand have not come to a single conclusion. Instead, they have varied based on the language used and the scope of the action taken by the district court on resentencing. *Compare United States v. Walls*, 546 F.3d 728, 738 (6th Cir. 2008), *and United States v. Barnett*, 398 F.3d 516, 530 (6th Cir. 2005), *with United States v. Abboud*, 308 F. App'x 977, 982 (6th Cir. 2009), *and  United States v. Franco*, 318 F. App'x 411, 413 (6th Cir. 2009). Here, because the only instructions given by the original panel to the district court were that the resentencing be consistent with the order granting remand and the Supreme Court's opinion in *Booker*, the district court was not constrained to the original record.

Neither the language of our previous order instructing the court to revisit the relevant conduct issue at resentencing nor the language remanding the case for resentencing consistent with *Booker* expresses any limitation on the district court's authority to consider additional evidence. The only language in the remand order concerning *Booker* states that the court and both parties agree that Stout's sentence "should be vacated and his sentence remanded for resentencing," and that resentencing should be consistent "with this decision and the Supreme Court's decision in *Booker*." The language of the opinion stating that "[b]ecause we are vacating Stout's sentence under *Booker*, see *infra*, the district court should revisit this issue upon resentencing" suggests that the panel contemplated this remand as allowing the district court to address other issues. Rather than creating an additional grant of authority to investigate relevant conduct, the court referred to the *Booker* remand. In interpreting the scope of the mandate, "[t]he key is to consider the specific language used in the context of the entire opinion or order." *Campbell*, 168 F.3d at 267-68. Moreover, the order's instruction that the district court revisit the relevant conduct issue further tips the balance in favor of the conclusion that the district court was allowed to consider new evidence. As the court stated in *Campbell*, the number of issues requiring remand can affect the scope of the remand: "[t]he delicate balancing that occurs in the sentencing process in light of the complexity of the Sentencing Guidelines leads this court to believe that limited remands are less likely to be desirable or effective when multiple issues require consideration." *Id.* at 268. Finally, that the district court addressed the issue of the scope of the remand and interpreted the remand as allowing additional evidence further supports this conclusion. "To impose a limited remand, an appellate court must sufficiently outline

the procedure the district court is to follow . . . .  With sentencing issues, in light of the general principle of de novo consideration at resentencing, this court should leave no doubt in the district judge's or parties' minds as to the scope of the remand."  *Id.*

In interpreting our previous order, Stout urges this court to read additional language into the order requiring that the district court conduct resentencing on the original record. The language used in the cases cited by Stout shows what is required for an appellate court to issue a limited remand—language that is lacking in the present case.  In *United States v. O'Dell*, 320 F.3d 674, 678 (6th Cir. 2003), the court found a limited remand where this court had previously issued an opinion that stated, "we VACATE the judgment of the sentence entered by [the] district court and REMAND for re-sentencing without application of the safety valve."  This court affirmed the district court's decision not to consider an *Apprendi* issue raised by the defendant at resentencing because the mandate was a limited one.  *Id.* at 680-81.  The court stated that the mandate "specifically instructed the court to resentence without application of the safety valve."  *Id.*  In contrast to the order in the present case stating that the district court should revisit the relevant conduct issue and remanding the case for resentencing in light of *Booker*, the remand in *O'Dell* clearly identified the action the district court was supposed to take.

The cases Stout cites in arguing that the Government should not have been allowed to present additional evidence to the district court show an even more explicit limitation on the district court's authority.  In *United States v. Gill*, 348 F.3d 147, 156 (6th Cir. 2003), this court held that the Government was required to distinguish between drugs a defendant held for personal use and those the defendant held for resale in showing relevant conduct, and further held that the Government was not entitled to present additional evidence of relevant conduct on remand.  The court stated that "because the lower court did not properly apply the relevant Sentencing Guidelines provisions, the case must be remanded for resentencing on the present record, since the government was entitled to only one opportunity to present evidence on this issue."  *Id.* (citation and internal quotation marks omitted).  Similarly, in *United States v. Goodman*, 519 F.3d 310, 323 (6th Cir. 2008), the court held that where the Government failed to establish that the defendant had used a firearm in connection with his crime, resentencing should be conducted on the basis of the original record.  The court stated:

> Because "[t]he government had the burden[] of persuasion, . . . we see no reason why it should get a second bite at the apple. No special circumstances justified, or even explained, the government's failure to sustain these burdens." *United States v. Leonzo*, 50 F.3d 1086, 1088 (D.C. Cir. 1995). Thus, "the case must be remanded for resentencing on the present record, since '[t]he government was entitled to only one opportunity to present evidence on this issue.'" *United States v. Gill*, 348 F.3d 147, 156 (6th Cir. 2003) (alteration in original) (quoting *United States v. Wyss*, 147 F.3d 631, 633 (7th Cir. 1998)).

*Id.* Additionally, in *United States v. Baker*, 559 F.3d 443, 455 n.10 (6th Cir. 2009), this court remanded for resentencing on the original record to determine the amount of cocaine for which the defendant was responsible because the Government had an incentive to do so at the first hearing and its failure to do so was not justified by special circumstances. All of these cases contain language unmistakably limiting the district court's resentencing inquiry to the original record. In the present case, no such language clearly appears in the opinion. The language of the order taken in the context of the entire opinion, the fact that there was more than one issue requiring remand, and the lack of instructions clearly limiting the scope of the remand all point in favor of the original panel having authorized the district court to consider additional evidence to determine relevant conduct.

Stout also argues, based largely on the line of cases described above, that the Government should not have had a second opportunity to present additional evidence on an issue for which it had the burden of production and persuasion at sentencing. *Gill*, *Goodman*, and *Baker* do provide reasons for an appellate court remanding a case for resentencing to limit the scope of the mandate to the original record in certain circumstances, but those cases do not hold that it is error for a district court to consider additional evidence when the appellate court does not limit the inquiry to the original record. Because the prior panel of this court instructed the district court to revisit the relevant conduct issue but did not include language clearly limiting the scope of the mandate to the original record, the district court did not err in considering additional evidence of relevant conduct.

As Stout sees it, "the law-of-the-case doctrine precludes the Government from relying upon Turner after the Sixth's Circuit's remand," but this argument misses the mark. The original presentence report stated that the statements of Jason Turner were too vague to establish the quantity of drugs used to determine Stout's relevant conduct, but the district

court did not address this finding at resentencing.  It was on the basis of Turner's *additional* statements that the final PSR determined the relevant quantity of drugs and the district court made its calculations.  The cases on which Stout relies merely stand for the proposition that "[t]he law-of-the-case doctrine bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not." *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997).  Because the district court was addressing the clarity and reliability of Turner's additional statements for the first time, it was not addressing a decision made at a previous stage of the litigation which could have been challenged in a prior appeal.

### III.

The district court did not commit clear error in determining the amount of drugs attributable to Stout because the statements of Jason Turner and Tammy Howell upon which the district court relied were supported by sufficient indicia of reliability.  Turner and Howell's statements were generally consistent with their testimony at trial, and parts of Turner's sentencing statement were corroborated by Stout's own post-arrest statement.  Although the calculations in the PSR upon which the district court based its findings were merely estimates and Turner and Stout were co-conspirators, these facts alone do not make the statements unreliable.

The district court did not clearly err in determining that the statements of Turner and Howell established Stout's relevant conduct by a preponderance of the evidence.  A district court's findings of fact at sentencing are subject to a preponderance-of-the-evidence standard.  *United States v. Hunt*, 487 F.3d 347, 350 (6th Cir. 2007).  Section 6A1.3(a) of the Sentencing Guidelines allows a sentencing court to "consider all relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." This court has stated that this minimum-indicia-of-reliability standard imposes a "relatively low hurdle." *United States v. Greene*, 71 F.3d 232, 235 (6th Cir. 1995).  Here, the district court based its determination of Stout's relevant conduct upon the out-of-court statements of Turner and Howell, but these statements were supported by sufficient indicia of reliability to meet the low reliability threshold.  Both Turner and Howell testified at trial, and each

witness's testimony at trial was generally consistent with the later sentencing statements. Howell testified at trial that she had known Stout and Turner for about three or four years, and that in the two years before the arrest she purchased both crack and powder cocaine from them for personal use and for resale. She stated that during this two-year period she would go to Stout's house to purchase cocaine every day, that she usually purchased "two or three eight balls a day maybe," and that she would sometimes clean Stout and Turner's house in exchange for drugs. This is generally consistent with Howell's sentencing statement, which said that she "bought 3-8 balls a day on average," and spent "approximately $500-$600 a day at Stout's house buying crack cocaine for about 1 year." Additionally, Turner's testimony at trial corroborated much of the information in Howell's sentencing statement. Turner testified that he had known Howell for at least the entire year he sold drugs with Stout, that Howell would buy drugs from Stout and Turner, and that Howell would sometimes clean their house in exchange for drugs.

Turner's sentencing statement was also consistent with his trial testimony. At trial, Turner testified that he had been living with Stout prior to the time they were both arrested. Turner also testified that once he began selling drugs, Stout took him to meet a supplier in Memphis named Taurus, and that the pair would buy between a half an ounce to an ounce of cocaine from Taurus "at least once a week." This is consistent with Turner's sentencing statements, in which Turner stated that from February, 2003, until October, 2003, Turner and Stout would travel to Memphis to meet a supplier named Taurus, that Turner "purchased an average of two and one-half ounces of crack cocaine per month from Taurus during this time period," and that Stout also purchased an unknown quantity of powder cocaine from Taurus. Moreover, Turner's statements are also corroborated in part by the statement Stout gave to police after Stout and Turner were arrested. Stout stated that he sold cocaine to 4 or 5 people and that his supplier "goes by the name of Taurus and lives in Whitehaven in Memphis." Stout also stated that Taurus generally had between an ounce and an ounce and a half of cocaine available.

The numbers given by Turner and Howell were estimates, but this court has stated that a "[i]f there are no means to determine the exact amount of drugs, 'an estimate will suffice, but . . . a preponderance of the evidence must support the estimate.'" *United States v. Fenderson*, No. 07-4482, 2009 WL 4251144, at *2 (6th Cir. Dec. 1, 2009) (quoting *United*

*States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990)).  The district court used the sentencing statements of Turner and Howell to estimate the amount of drugs sold by Stout and Turner.  These statements were generally consistent with the sworn statements the witnesses gave at trial, and Stout himself admitted to having sold drugs to 4 or 5 people and stated that he and Turner purchased drugs from the supplier Turner implicated.  Moreover, no evidence contradicted the information contained in the statements.  Under these circumstances, "approximations are completely appropriate."  *United States v. Hernandez*, 227 F.3d 686, 699 (6th Cir. 2000).

Stout argues that the district court erred in not giving Turner's statement particular scrutiny because Turner was a co-conspirator.  While it is true that we have noted that such statements may be suspect, *United States v. Moncivais*, 492 F.3d 652, 659 (6th Cir. 2007), the cases from this circuit that Stout cites regarding statements by co-conspirators all held that the hearsay statements of co-conspirators were sufficiently reliable.  In *United States v. Hunt*, 487 F.3d 347, 353 (6th Cir. 2007), the court determined that the district court did not clearly err in basing a factual finding on the statements of co-conspirators when those statements were given independently months apart and corroborated each other, and there was corroborating evidence in the record and no contradictory evidence.  Similarly, in *Moncivais*, the court stated that the hearsay evidence presented by a co-conspirator was "clearly above the minimum standard of reliability required for the evidence to be admissible at sentencing," when that evidence was detailed and both internally and externally consistent.  492 F.3d at 659.  The court also noted that the defendant pointed to nothing about the co-conspirator's statement that suggested it was unreliable, beyond the fact that it was hearsay and that it was made by a co-conspirator.  Similarly, in the present case, Stout has not pointed to any factors that make Turner's statement unreliable other than the fact that Turner was a co-conspirator.[1]  The district court determined the statements of both Turner and Howell to be credible, and credibility determinations are generally not subject to reversal upon appellate review.  *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999).

Finally, Stout argues that the district court's rulings on the objections to the presentence report failed to satisfy Federal Rule of Criminal Procedure 32(i)(3)(B), which

---

[1]Stout points to the probation officer's determination that Turner's initial statement was too vague to use to calculate relevant conduct, but this has no bearing on Turner's later statements.

states that a sentencing court must rule on any disputed portion of the presentence report or determine that such a ruling is unnecessary. While it would have been preferable for the court to have expressly restated the calculations used to determine the amounts of cocaine attributed to Stout for sentencing purposes, in light of Stout's having controverted the amounts, the court's credibility determination regarding the witnesses and the court's statements on the record discussing the accuracy of the calculations in the PSR were sufficient to meet the requirements of Rule 32.

For the foregoing reasons, Stout's sentence is affirmed.