NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0690n.06

Nos. 09-4078/09-4079

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Sep 28, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHEL ABBOUD, | ) | |
| | ) | |
| Defendant-Appellant. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| v. | ) | |
| | ) | |
| ELIE ABBOUD, | ) | |
| | ) | |
| Defendant-Appellant. | | |

Before: DAUGHTREY, MOORE, and STRANCH, Circuit Judges.

**PER CURIAM.** The defendants in this case, Michel Abboud and Elie Abboud, appeal the district court's imposition of 97-month sentences each, following their convictions for money-laundering, bank fraud, and tax evasion. The sentences were imposed at a third sentencing hearing, following two previous appeals and two orders of remand from this court, both for re-sentencing. *See United States v. Abboud*, 438 F.3d 554, 595 (6th Cir. 2006) (*Abboud I*); *United States v. Abboud*, Nos. 06-4498, 06-4499, 2009 WL 224038 (6th Cir. Jan. 30, 2009) (*Abboud II*). In this appeal, the

Abbouds advance various bases for invalidating the district court's latest effort at sentencing, many of which are foreclosed from review because they were raised and rejected in a prior appeal or could have been raised but were not. Finding no merit to the remaining claims, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Brothers Michel Abboud and Elie Abboud owned various neighborhood "corner stores" that sold groceries and offered basic financial services such as the sale of money orders and check-cashing. *Abboud I*, 438 F.3d at 562. In connection with their businesses, the Abbouds controlled seven or eight bank accounts. *Id.* at 563. The record shows that they regularly engaged in "check kiting" by fraudulently cycling through checks drawn on bank accounts that they themselves controlled, in order to inflate the balances of the accounts artificially. *Id.* at 563-66. The defendants would then "bleed the kite" by drawing out funds from accounts with artificial balances. *Id.* at 565.

Following a jury trial in February 2004, the brothers were found guilty of multiple counts of bank fraud, money-laundering, and filing false tax returns and single counts of conspiracy to commit bank fraud and conspiracy to commit money-laundering. The district court sentenced both defendants to 97 months in prison, followed by three years of supervised release, along with monetary penalties. The defendants timely appealed to this court, challenging their convictions and sentences on multiple grounds. Among other claims, they contended that there was insufficient evidence to support the convictions for bank fraud and money-laundering. We affirmed the

convictions in 2006, but determined that the sentences were imposed under the then-mandatory United States Sentencing Guidelines, requiring a remand for re-sentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). *Abboud I*, 438 F.3d at 595.

On remand, a different district judge sentenced Michel Abboud to 108 months' imprisonment and Elie Abboud to 121 months' imprisonment. The defendants filed a sentencing appeal, challenging as improper both the increase in incarceration and the district court's consideration of post-remand conduct. We found no error in connection with the district court's findings, except to the extent that the court factored in the defendants' post-remand conduct. *Abboud II*, 2009 WL 224038 at *6. We therefore remanded the case for a third sentencing hearing. *Id.* at *8. In May 2009, the district court sentenced both defendants to 97-months' imprisonment. That sentencing order is now before us on appeal.

## DISCUSSION

Although Michel Abboud and Elie Abboud challenge the district court's judgment on some half-dozen grounds, our review of many of their claims is foreclosed by the doctrine of "law of the case," under which we are bound by our previous rulings on the same questions. *See United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (holding that "findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation"). As a result, in this case we are prevented from considering any claims relating to the defendants' convictions, which were affirmed in *Abboud I*, including Michel Abboud's contention that the evidence was

insufficient to convict. *Abboud I*, 438 F.3d at 595. Moreover, the Abbouds' challenges to the district court's calculation of the losses sustained by the banks were considered and rejected in both *Abboud I*, *id.* at 586-95, and *Abboud II*, 2009 WL 224038 at *3-*4, *6. And, although the district court reviewed, on its merits, and correctly rejected the defendants' claim that the Supreme Court's opinion in *United States v. Santos*, 553 U.S. 507 (2008), is applicable to the determination of their sentences, the record establishes that the Abbouds had brought the same question to our attention in *Abboud II*, only to have us deny relief on that basis, even if not as the result of detailed analysis. *See Abboud II*, 2009 WL 224038 at *7 ("We have also reviewed Defendant's remaining arguments, and find them to be without merit."). Finally, Elie Abboud's challenge to the district court's calculation of the appropriate range under the sentencing guidelines was also considered and rejected in *Abboud II*, 2009 WL 224038 at *6. As a result, none of these claims is subject to yet another review at this point in the litigation.

Our review of Michel Abboud's challenge to the use of the 1998 sentencing guidelines manual is also circumscribed because it is now being raised for the first time.[1] Michel Abboud insists that the district court erred at this last re-sentencing by continuing to use the 1998 manual, which was in effect at the time of the 1999 offenses, rather than the 2003 manual that was applicable at the time he was initially sentenced in 2004. Although the guidelines themselves

---

[1]The government argues that the question is foreclosed by our opinion in *Abboud II*, in which we affirmed the district court's determination in the second sentencing hearing that Michel Abboud's sentence was properly based on an offense level of 30. *Abboud II*, 2009 WL 224038 at *4. Although that observation is correct as far as it goes, the issue of which manual was applicable was not at issue. We therefore opt to treat this claim as one requiring review for plain error.

provide that a sentencing court "shall use the Guidelines Manual in effect on the date that the defendant is sentenced," U.S.S.G. § 1B1.11(a), if *ex post facto* concerns are implicated by using the most recent version of the guidelines at sentencing, the court is directed by subsection (b)(1) to use the manual in effect at the time the crime was committed.

Unfortunately for him, Michel Abboud's failure to raise the issue of the applicability of the 1998 manual at any of the three sentencing hearings to which he has been subjected constitutes a forfeiture of the claim that he was erroneously sentenced, which cannot now be considered without a showing of plain error. *See United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004) (citing Fed. R. Crim. P. 52(b)). Indeed, on at least one occasion, we have held in similar circumstances that the claim was waived. *See United States v. Nagi*, 947 F.2d 211, 213-14 (6th Cir. 1991) ("Although technically the November 1987 Guidelines apply because of the potential ex post facto problem, [the defendants] raise this issue for the first time on appeal. For the familiar reason that we do not ordinarily address issues that might have been but were not raised in the trial court, we decline to address the issue now for the first time."). In any event, we find no error, plain or otherwise.

Defense counsel has calculated Michel Abboud's offense level under the guidelines in the 2003 manual at 25, five levels below the offense level of 30 that was proposed in the defendant's presentence report and validated in *Abboud II*, 2009 WL 224038 at *4. But the government's calculation, as well as this court's, puts the offense level derived from the 2003 manual at 31, which supports the suggestion in the presentence report that the district court should utilize the

1998 manual because its provisions were "less onerous." Thus, we conclude that defendant has not established error in connection with the use of the 1998 guidelines manual. Because there was no error, there is likewise no basis for the allegation that trial counsel rendered ineffective assistance by failing to object to the use of the 1998 manual.

As to the remaining issues raised, we address, first, Michel Abboud's claim that his sentence is procedurally and substantively unreasonable because he was sentenced to the same term of imprisonment as his brother, despite the fact that the district court had determined at the second sentencing hearing that Michel Abboud's conduct warranted a lesser sentence than Elie Abboud's conduct. Because the district court gave the defendant the chance to raise any objections he had to the sentence, pursuant to the mandate of *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), and the defendant failed to raise this one, the claim is subject to review for plain error only. *Cromer*, 389 F.3d at 672 (citing Fed. R. Crim. P. 52(b)). There was none here.

On remand, a district court may impose a different sentence as long as it is consistent with the appellate decision and mandate contained in the remand order and is not based on vindictiveness. *See United States v. Bond*, 171 F.3d 1047, 1048 (6th Cir. 1999). Thus, just as with a defendant's original sentence, a new sentence within the guidelines is afforded a rebuttable presumption of reasonableness. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (*en banc*). It is clear from the sentencing transcript that the district judge considered the scope of the individual defendants' involvement in the criminal conduct for which they were convicted and recognized that Michel Abboud's role in the offenses was somewhat less egregious than that of

his brother. However, the judge ultimately concluded that any disparity in involvement did not warrant a downward departure, noting in his sentencing memorandum:

> The Court agrees that Michel's conduct is slightly less culpable than that of his brother. Elie had more direct interaction with the banking institutions and more direct involvement in the kiting and money laundering schemes. However, Michel's lesser culpability is offset by two factors. First, he committed a crime prior to the instant offense, receiving stolen property. Second, he was convicted of a firearm offense in this matter, unlike Elie. Based on those distinctions, the Court believes that the sentences issued should be on par with one another.

*United States v. Michel Abboud*, No. 1:02CR236, Sentencing Memorandum (N.D. Ohio Aug. 24, 2009). These reasoned explanations refute any claim that the district court decided to re-sentence Michel Abboud to the same term of imprisonment as his brother out of vindictiveness. Further, the district court gave a detailed explanation of the reason for the sentence imposed, including a discussion of the § 3553(a) factors. Thus, the district court's decision to sentence Michel Abboud to the same sentence as Elie Aboud was not unreasonable.

Likewise, the district court carefully considered the § 3553(a) factors as they applied to Elie Abboud, giving attention to the nature of the offense and the background of the defendant. The court's analysis and conclusions are recorded in two pages of a sentencing memorandum that set out and discuss the § 3553(a) factors and how they related to the possibility of a variance from the guidelines range. *See United States v. Elie Abboud*, No. 1:02CR236, Sentencing Memorandum at 4-6 (N.D. Ohio Aug. 24, 2009). The district court's detailed explanation is more than sufficient to demonstrate that the sentence was procedurally and substantively reasonable.

Next, Elie Abboud contends that the district court deprived him of due process when it interfered with his right of allocution. Pursuant to Federal Rule of Criminal Procedure 32(i)(4)(A)(ii), a criminal defendant is entitled to "speak or present any information to mitigate sentence" during the sentencing hearing. Denial of allocution is reversible error. *United States v. Riascos-Suarez*, 73 F.3d 616, 627 (6th Cir. 1996), *abrogated on other grounds*, *Muscarello v. United States*, 524 U.S. 125, 138 (1998) . The right to allocution, however, is not unlimited in time or content, *see United States v. Carter*, 355 F.3d 920, 926 (6th Cir. 2004) (citing *United States v. Li*, 115 F.3d 125, 133 (2d Cir. 1997)), and a court "does not have to let the defendant re-argue the case at sentencing." *See id.* (quoting *United States v. Muniz*, 1 F.3d 1018, 1025 (10th Cir. 1993)).

Here, Elie Abboud does not argue that he was completely deprived of the right of allocution but, instead, that by interrupting him during his allocution, the court prevented him from presenting certain alleged discrepancies in the government witnesses' testimony. The record reveals that after the district court invited Elie Abboud to make a statement on his own behalf, the defendant read a very lengthy statement, totaling 25 pages of transcript. Although the district court judge did interrupt the defendant three times during the course of his statement, each time it was to remind the defendant of the purposes of allocution, specifically that it was inappropriate to re-argue legal points that had already been settled in the Court of Appeals. As the judge observed:

> [T]here have been two Sixth Circuit opinions which have revisited and touched on
> many of the issues you now raise. The first reported opinion has considered and
> rejected some of the arguments you're making, and the second opinion touches on

some of the issues. So I want to give you a full opportunity for allocution, but I'm not going to allow you to go on for an extensive period of time here, sir, to rehash or revisit some of the things already put before the Court in the brief, the legal arguments. That's what you have counsel for.

No. 1:02CR236, DE 437, Sent. Tr. at 30.

At no point did the district judge actually stop the defendant from speaking, and at the end of his statement, the defendant stopped speaking voluntarily, adding, "God bless you, Your Honor. Thank you for being patient." Hence, it is clear from the sentencing transcript that Elie Abboud was given an extensive amount of time in which to make a statement and that he himself was satisfied with its delivery at the time of his allocution. We thus conclude that there was no denial of due process.

Shortly after this case was argued, the United States Supreme Court announced its opinion in *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), holding that under the Sixth Amendment's Confrontation Clause, only the technician who performs forensic testing and certifies the results can testify regarding those results, unless he or she is unavailable and the defendant has had a prior opportunity to cross-examine the technician. The Abbouds filed a supplemental brief in this court, contending that the government should have called as a witness the analyst who, during the investigation leading to the charges against them, actually entered relevant financial data into a software program designed to detect check-kiting. In failing to call the original technician, the defendants insist, the government violated their constitutional right to confront the witnesses against them, as provided in *Bullcoming*.

In raising the *Bullcoming* issue at this stage of the proceedings, the Abbouds face three obstacles. First, it is not clear whether this claim can be reviewed at all, given the question of its retroactivity, which remains unaddressed. Moreover, the issue was not raised in the district court or, initially, on appeal and, as a result, it can now be reviewed only for plain error. Finally, there are significant differences between the expert testimony in this case and the evidence proffered in *Bullcoming* that make the analysis in that case inapplicable to the facts here, leading to the conclusion that there was no error – plain or otherwise.

Donald Bullcoming had been charged with driving under the influence of alcohol. His blood was drawn and tested at the New Mexico Department of Health by Curtis Caylor, a forensic analyst there. Caylor also completed a certificate that outlined the procedures he used for testing as well as the test conditions. Prosecutors did not call Caylor to the stand, however, but instead presented another analyst who had not participated in testing Bullcoming's blood but was familiar with the testing device and the procedures of the laboratory. The Court held that the Confrontation Clause barred "the prosecution [from] introduc[ing] a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." *Id.* at 2710.

In contrast to the deficient testimony in *Bullcoming*, the expert in this case was an FBI agent who not only had access to the source material on which his opinion was based – in this case checks, financial records, and the like – but who also testified that he personally verified the data

that had been entered and analyzed by the software system was correct:

> Q. Sir, handing you what has been marked as Government's Exhibit 8-1, I ask you if you recognize that?
>
> A. Yes, I do.
>
> Q. What is this?
>
> A. This contains the check kiting analysis report that has been prepared for this case.
>
> Q. And where was that report prepared?
>
> A. That would have been here in Cleveland.
>
> Q. Did you review it and compare it to the data that was input into the analysis?
>
> A. Yes, I did.
>
> * * * * *
>
> Q. Did you review the report and compare it to the
>
> bank statements and checks that you have described?
>
> A. Yes, I did.
>
> Q. And did you determine on your own that the data was
>
> put into this program appropriately?
>
> A. Yes, I did.

Testimony of FBI Special Agent Randall Wolverton, Trial Tr. 1196-97.

Thus, this was not a case in which the testifying expert had a "total lack of connection to the test at issue," as in *Bullcoming*. Indeed, the *Bullcoming* court took care to point out that New Mexico could have avoided the Confrontation Clause issue if the state had asked the testifying expert to re-test the sample himself, rather than testify "to the results of a test he did not conduct or observe." *Bullcoming*, 131 S. Ct. 2718. That re-testing is precisely what occurred in this case.

We therefore conclude that *if* the claim can be reviewed at all, it has no merit, and we deny the

government's motion to strike.

## **CONCLUSION**

For the reasons set out above, we AFFIRM the judgment of the district court.