RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0384P (6th Cir.)
File Name: 03a0384p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.                                  No. 01-6538

CHRISTOPHER GILL,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 01-10019—James D. Todd, Chief District Judge.

Argued: March 12, 2003

Decided and Filed: October 31, 2003

Before: MOORE and CLAY, Circuit Judges; LAWSON,
District Judge.*

———————

## COUNSEL

**ARGUED:** April R. Goode, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.

———————

* The Honorable David M. Lawson, United States District Judge for
the Eastern District of Michigan, sitting by designation.

Victor L. Ivy, ASSISTANT UNITED STATES ATTORNEY,
Jackson, Tennessee, for Appellee. **ON BRIEF:** M. Dianne
Smothers, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Memphis, Tennessee, for Appellant. Victor L.
Ivy, ASSISTANT UNITED STATES ATTORNEY, Jackson,
Tennessee, for Appellee.

———————

## OPINION

———————

DAVID M. LAWSON, District Judge. The United States
Sentencing Commission has prescribed a methodology that
trial courts must use to determine a sentencing range in a
criminal case. A key ingredient of the sentencing formula in
drug cases is the quantity of a controlled substance for which
a convicted defendant will be held accountable. A defendant
is responsible for all drug quantities that are included within
the scope of his "relevant conduct," as that term is defined by
the United States Sentencing Guidelines Manual. In this case,
Christopher Gill, the defendant, contends that his sentence for
possession with intent to distribute cocaine was too severe
because the district court included in its calculation of drug
quantity, cocaine that Gill possessed only for personal use.
We agree with this argument, for reasons explained in detail
below, and therefore we vacate Gill's sentence and remand
for a new sentencing hearing.

I.

On April 16, 2001, Gill was indicted on three counts by a
grand jury for the United States District Court for the Western
District of Tennessee, sitting in Jackson. Count one charged
the defendant with possession of cocaine with intent to
distribute, contrary to 21 U.S.C. § 841(a)(1). In count two,
the grand jury alleged that the defendant knowingly possessed
a firearm in furtherance of a drug trafficking crime, contrary
to 18 U.S.C. § 924(c). The third and final count charged

unlawful possession of that same firearm by a previously convicted felon. *See* 18 U.S.C. § 922(g). All of these offenses were alleged to have been committed on December 20, 2000.

The defendant pleaded guilty to counts one and two on August 17, 2001, and the government agreed to dismiss the remaining count. After receiving the presentence report, the defendant objected to the recommendation that he be sentenced to 81 months in custody. Although he did not dispute the initial 60 months of that term, which stemmed from his conviction on count two, the defendant alleged that the recommended 21-month sentence was based on an erroneous conclusion that he intended to distribute 35.4375 grams of cocaine. The basis for the probation officer's reasoning was as follows:

> Mr. Gill stated to police that he had bought eight grams of powder cocaine for personal use during the weekend preceding his arrest on the instant offense, and the electronic scales he possessed were used for his own quality control purposes to avoid getting shorted in his drug transactions. However, in a written statement made to officers of the Jackson Police Department on March 30, 2001, Christopher J. Gill stated that for the five weeks preceding his arrest on the instant offense, he would buy approximately one-quarter ounce of "soft" (powdered cocaine) and would sell out of that quantity to make a profit.

J.A. at 40. Although the calculations leading to the 35.4375-gram figure are not provided in the report, the government quite sensibly suggests that the probation officer simply multiplied the quarter-ounce figure by five, one for each week, and then converted 1.25 ounces to the figure of 35.4375 grams. The probation officer then referred to U.S.S.G. § 2D1.1(c)(13), which establishes a base offense level of 14 in cases where the defendant is accountable for 25 to 50 grams of cocaine powder. The probation officer then

deducted two points for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), and concluded that the applicable sentence range, given the defendant's placement in criminal history category IV, was 21 to 27 months. *See id.* Ch. 5, Pt. A (sentencing table).

As previously stated, the defendant filed timely objections to the presentence report, contending that he should be held accountable only for 6.8 grams of cocaine, the amount in his possession when he was arrested. Gill reasoned that he was not charged with conspiracy or with possession over a range of dates; instead the offense of conviction, according to the indictment, was that Gill possessed the cocaine that he intended to distribute on a specific date. That drug amount called for a base offense level of 12, and a net offense level of 10, yielding a sentence range of 15 to 21 months in custody.

At sentencing, the government urged adoption of the presentence report and read the report's summary of the defendant's statements into the record. No other evidence was offered concerning the amount of cocaine possessed by the defendant. In response to the district court's query as to the government's position on how to account for the drugs the defendant likely possessed for personal use, the Assistant United States Attorney stated that he had not researched the issue, he had no witnesses available to inform the court of the "customary practice" on the street, and he found it difficult to provide a definitive answer. J.A. at 28-29. Defense counsel also confessed that she knew of no authority on how such adjustments could be made, but relied on the defendant's insistence that he had purchased eight grams the week before his arrest and had about six grams remaining at the time of his arrest. Since the defendant was found in possession of 6.8 grams, defense counsel argued that use of the full eight-gram figure would be inaccurate and inappropriate. J.A. at 30.

The district court also stated that it had found no controlling authority on the issue, but concluded "the law ought to be, if it's not, that if you possess drugs with intent to

distribute some of it [sic] and you're going to use some of it, then all of it is attributable to you as relevant conduct in a drug sale case." *Id.* at 31. "Otherwise," the district court reasoned,

> we'd end up with a situation in every case where a drug dealer caught up with a big bag of dope, all he's got to do is say, "Well, I had bought this as my private stash, and I was going to use a gram a week for the next six years," and it gets impossible to determine.

*Ibid.* The district court proceeded to adopt the presentence report recommendation, calculated the appropriate guideline range on count one to be 21 to 27 months, and then sentenced the defendant to 21 months of incarceration to run consecutive to his mandatory-minimum sentence of 60 months on count two. Four years of supervised release are to follow after the defendant's release from custody.

Judgment was entered on November 14, 2001, and the defendant filed a timely appeal. Gill does not challenge in this appeal his sixty-month sentence on the weapons count.

## II.

The district court's factual findings at a sentencing proceeding are reviewed for clear error, and its application of the Sentencing Guidelines to those facts is reviewed *de novo*. *United States v. Butler*, 297 F.3d 505, 516 (6th Cir. 2002), *cert. denied* ___ U.S. ___, 123 S. Ct. 2074 (2003). When calculating the drug quantities attributable to a defendant as relevant conduct under the Sentencing Guidelines, the district court's findings must be supported by a preponderance of the evidence. *United States v. Copeland*, 321 F.3d 582, 602 (6th Cir. 2003). When the amount of drugs is uncertain, the district court must "err on the side of caution" and hold the defendant accountable only for that amount that is more likely than not attributable to the defendant. *Ibid.*; *United States v. Lopez*, 309 F.3d 966, 972 (6th Cir. 2002), *cert. denied*, ___

U.S. ___, 123 S. Ct. 1380 (2003). Relevant conduct need not be charged, nor must it otherwise even be within the jurisdiction of the sentencing court. *United States v. Hough*, 276 F.3d 884, 898 (6th Cir. 2002).

According to the Sentencing Guidelines Manual, the first step in establishing a sentencing range is to locate the applicable guideline section according to the offense of conviction, *see* U.S.S.G. § 1B1.2(a), and then set the offense level based on the defendant's "relevant conduct." *See id.* § 1B1.2(b). Here, the defendant was charged with possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a), which required the sentencing court to refer to U.S.S.G. § 2D1.1 to obtain the base offense level. *See id.* App. A. The crime of simple possession, which is defined by 21 U.S.C. § 844(a), calls for the use of a different guideline section, U.S.S.G. § 2D2.1. Under Section 2D1.1, the base offense level for a defendant whose crime does not involve death or serious bodily injury resulting from the use of a controlled substance is determined exclusively by the drug quantity table. *See id.* § 2D1.1(a)(3). The amount entered into that table, however, is not limited to the quantity involved in the defendant's crime. The Guidelines Manual directs that "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. *See* § 1B1.3(a)(2) (Relevant Conduct)." *Id.* § 2D1.1, comment. (n.12).

In order to determine whether drug quantities possessed for personal use should be included in the tally when establishing the base offense level for a distribution- or trafficking-type crime under Section 2D1.1, the sentencing court must follow the path laid out in the Guidelines Manual to the definition of "relevant conduct" found in Section 1B1.3. There, the Sentencing Commission states that the base offense level in cases of this sort is determined "on the basis of . . . all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the

offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.* § 1B1.3(a)(1). In addition, "with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts," relevant conduct includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* § 1B1.3(a)(2). Offenses characterized by the grouping rule contained in Section 3D1.2 are those that "involv[e] substantially the same harm." *Id.* § 3D1.2. Pursuing that definition further, we learn that multiple counts involve the "same harm" "[w]hen the offense level is determined largely on the basis of . . . the quantity of a substance involved." *Id.* § 3D1.2(d). However, the Guidelines Manual lists the offenses that may be grouped under this subsection, and, with respect to drug offenses, includes only those offenses covered by "§§ 2D1.1, 2D1.2, 2D1.5, 2D1.11, [and] 2D1.13." *Ibid.* Simple possession of a controlled substance, covered by Section 2D2.1, is not included in this list.

As noted above, the offense of conviction in this case is possession of a controlled substance *with intent to distribute*, a crime separate and distinct from simple possession. The defendant insists that it is axiomatic that drug quantities possessed for personal use were not possessed for the purpose of later distribution and therefore could not have been part of the offense of conviction. The government counters that the defendant's purpose for possessing some of the drugs does not matter, since, according to the government, we previously held in *United States v. Thomas*, 49 F.3d 253 (6th Cir. 1995), that personal use amounts should be counted in fashioning a sentence for possession with intent to distribute, and we reached the same result in a drug conspiracy case in *United States v. Page*, 232 F.3d 536 (6th Cir. 2000), *cert. denied*, 532 U.S. 1056 (2001).

We do not agree with the government's reading of *Thomas*, or the notion that it resolves the issue presented in this case in

favor of the government. In fact, *Thomas* suggests the opposite conclusion. In that case, the defendant, who was convicted of distribution and possession with intent to distribute cocaine base, argued that 2.15 grams of 6.32 grams of cocaine base found when he was searched were for purely personal use. We held that the district court properly could have rejected this inference, however, based on the testimony of the government's drug agent that no "mere user" would have over two grams of cocaine base on his person under those circumstances. Accordingly, we affirmed the sentence based on the full amount possessed by the defendant. *Thomas*, 49 F.3d at 259-60. As the defendant points out in his brief in this case, if there were no legal distinction between drugs possessed for personal consumption on one hand, and trafficking, on the other, when the sentence is for a distribution-type offense, then it would have been pointless for the *Thomas* court even to have raised the issue of whether the proof of an intent to distribute the entire quantity was sufficient.

We believe that *Page* is inapplicable because of the different considerations that arise when the defendant has been convicted of conspiracy to distribute drugs. As we explained in that case, the key factor in determining the quantity of drugs for which an individual conspirator will be held accountable at sentencing is foreseeability. *Page*, 232 F.3d at 541-42. Thus, adopting the reasoning of the First Circuit in *United States v. Innamorati*, 996 F.2d 456, 492 (1st Cir. 1993), we held "that the drugs obtained by defendant from his supplier for his personal use were properly included by the district court in determining the quantity of drugs that the defendant knew were distributed by the conspiracy." *Page*, 232 F.3d at 542. In this case, the defendant was not charged with or convicted of conspiracy, nor was his involvement in a conspiracy proved as part of the relevant conduct. The record in this case presents the claim that the defendant was involved in but two drug crimes: possession with intent to distribute, for which he was charged, and simple possession, which was uncharged criminal conduct.

Uncharged conduct may be considered in calculating the sentencing range under the Sentencing Guidelines only if the conduct is "relevant." *See United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir.), *cert. denied*, 519 U.S. 858 (1996). Returning to the Sentencing Guidelines Manual's language – which we hesitate to describe as "plain," although it is unequivocal – the defendant's possession of drugs for personal use cannot be considered an "act[] . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" under Section 1B1.3(a)(1), since the offense of conviction required an intent to distribute to accompany the act of drug possession under 21 U.S.C. § 841(a). *See United States v. Bennett*, 291 F.3d 888, 895 (6th Cir. 2002). Possessing drugs for personal use was not part of or connected to the commission of, preparation for, or concealment of the distribution-type offense. Simple possession is not "relevant" under Section 1B1.3(a)(2), as "part of the same course of conduct or common scheme or plan," because that section applies only if the two offenses can be grouped under Section 3D1.2(d). *See Hill*, 79 F.3d at 1482. Simple possession is not one of the crimes listed in this grouping rule that triggers the application of that relevant conduct section.

We hold, therefore, that simple possession of illegal drugs for personal use is not conduct that is "relevant" to the charge of possession with intent to distribute a controlled substance for the purpose of determining a sentence range under the Sentencing Guidelines. Amounts possessed for personal consumption should not be included when calculating the amount of drugs to enter into the drug quantity table in U.S.S.G. § 2D1.1(c).

Other circuits have reached the same conclusion, albeit by different reasoning. In *United States v. Kipp*, 10 F.3d 1463 (9th Cir. 1993), the Ninth Circuit sustained a defendant's objection to the inclusion of drugs intended purely for personal use in the relevant conduct for his distribution

conviction. Citing Section 2D1.1, the court first observed that the base offense level for a drug offense is based entirely on the quantity of drugs, and that the government has the burden to prove this amount by a preponderance of the evidence, as we likewise have held. *See United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000). Then, referring to Section 1B1.3(a)(2), the court declared that "[d]rugs possessed for mere personal use are not relevant to the crime of possession with intent to distribute because they are not 'part of the same course of conduct' or 'common scheme' as drugs intended for distribution." *Kipp*, 10 F.3d at 1465-66. The court concluded that sentencing courts calculating a base offense level using Section 2D1.1(c) "must make a factual finding as to the quantity of drugs possessed for distribution and cannot include any amount possessed strictly for personal use." *Id.* at 1466.

Although the Ninth Circuit relied on a subsection of the relevant conduct provision that we find inapplicable, we nonetheless agree with the alternate ground put forth for excluding personal use drugs from the total in such cases:

> [F]ailure to distinguish the amount possessed for personal use from the amount possessed for distribution contravenes a fundamental principle of the Sentencing Guidelines – proportionality in sentencing – because it would result in sentencing a drug user who possessed 50 grams for personal use and gave one gram away more harshly than a drug dealer who possessed 49 grams for distribution.

*Ibid. See also United States v. Rodriguez-Sanchez*, 23 F.3d 1488, 1496 (9th Cir. 1994) (noting that "§ 841(a)(1) does not criminalize mere possession of drugs, only possession with intent to distribute. . . . Other statutes deal with the crime of possession. *See* 21 U.S.C. § 844.").

Our holding follows more closely the decision of the Seventh Circuit in *United States v. Wyss*, 147 F.3d 631 (7th

Cir. 1998). There, the court vacated the defendant's sentence for possession with intent to distribute marijuana because the trial court may have included cocaine possessed for personal consumption in its guideline calculation. The *Wyss* court also made reference to Section 1B1.3(a)(2), noting that under the Sentencing Guidelines, an uncharged drug offense is not relevant unless it is part of the same course of conduct or common plan as the offense of conviction. "It can only be that if it is part of the same group of offenses for sentencing purposes." *Id.* at 632. Referring to the grouping rule, Section 3D1.2(d), the court observed that "[p]ossession of illegal drugs for personal use cannot be grouped with other offenses." *Ibid.*

The Eighth and Second Circuits have adopted similar positions. *See United States v. Fraser*, 243 F.3d 473, 476 (8th Cir. 2001) (adopting the reasoning of both *Kipp* and *Wyss*, and holding that when calculating the base offense level of § 2D1.1 of the Guidelines, "drug quantities intended for personal use must be excluded"); *United States v. Williams*, 247 F.3d 353 (2d Cir. 2001) (following *Kipp* and *Wyss*). The Eleventh Circuit specifically rejected *Kipp* in *United States v. Antonietti*, 86 F.3d 206 (11th Cir. 1996), but we agree with other courts that have found the facts in *Antonietti* to be distinguishable, primarily because the defendant in that case was convicted of both possession with intent to distribute *and* conspiracy to distribute. *See Williams*, 247 F.3d at 357-58. We, therefore, do not view the Eleventh Circuit decision as convincing precedent and we join the other circuits that have refused to follow it. *See Fraser*, 243 F.3d at 475 n.4 (noting that the conviction for conspiracy to distribute "may have been the real rationale" for the Eleventh Circuit's decision); *Wyss*, 147 F.3d at 632 (stating that *Antonietti*, in rejecting *Kipp*, "overlooked" the distinction between conspiracy and possession with intent to distribute).

Gill also contends that the relevant conduct inquiry must be confined to his activity that took place on December 20, 2000, because he was charged with possession with intent to

distribute on only that single date. He maintains that his acquisition of cocaine over the previous five weeks, from which he sold a portion, according to his statement, cannot be counted in the total drug quantity for the purpose of U.S.S.G. § 2D1.1(c). This argument must be rejected. Certain uncharged conduct may be considered as "relevant conduct" under the Sentencing Guidelines. *Hough*, 276 F.3d at 898; *United States v. Silverman*, 889 F.2d 1531, 1538-39 (6th Cir. 1989), *cert. denied*, 507 U.S. 990 (1993) (holding that "conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable Guideline sentencing range"). We previously have observed that separate incidents of possession with intent to distribute can be included within the scope of relevant conduct for the purpose of determining drug quantity when they qualify as part of a "common scheme or plan" or constitute the "same course of conduct" under U.S.S.G. § 1B1.3. *See Hill*, 79 F.3d at 1481-85 (finding that a discrete incident of possession separated in time by over one year from the offense of conviction could not be part of a common scheme or course of conduct). To find that separate events are related in this fashion, the Guidelines Manual requires courts to balance three factors: "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.* at 1482 (quoting U.S.S.G. § 1B1.3, comment. (n.9(B))). We believe that the sentencing court could conclude that Gill's serial practice of acquiring a quantity of cocaine to sell each week for five weeks could constitute "part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3, comment. (n.9(B)). The portion of cocaine found to be obtained for later distribution, therefore, properly is included in the quantity for which the defendant should be accountable under Section 2D1.1(c).

The sentencing court in this case included cocaine that the defendant possessed for personal use in the total drug quantity when it arrived at a base offense level of 14 under U.S.S.G. § 2D1.1(c)(13). This was error. However, the government

insists that the district court's error was harmless because the sentence of 21 months is admittedly within both of the competing guideline ranges in this case. Harmless error is not an inevitable conclusion under these circumstances. Rather, in determining whether a remand is required, "a court of appeals must decide whether the district court would have imposed the same sentence had it not relied upon the invalid factor or factors." *Williams v. United States*, 503 U.S. 193, 203 (1992); *United States v. Reed*, 264 F.3d 640, 652 (6th Cir. 2001), *cert. denied*, 535 U.S. 962 (2002). A sentence falling within both guideline ranges is, to be sure, a factor to be considered, but it does not compel a finding of harmless error. *See United States v. Vandeberg*, 201 F.3d 805, 812 (6th Cir. 2000) (holding that erroneous sentencing enhancement was not harmless because it altered the applicable guideline range from 140-175 months to 120-150 months, and the defendant had been sentenced to a 140-month term of incarceration). It would be a different matter if the sentence either way is subject to the *same* guideline range, of course. *See United States v. Charles*, 138 F.3d 257, 268 (6th Cir. 1998). When the district court sentences a defendant to the low end of the guideline range, however, the appellate court can reasonably infer that the defendant might have received a lower sentence if the guideline range itself had been lower.

In order to demonstrate that the trial court's error was not harmless, the defendant must show that the trial court could have found, by a preponderance of evidence, that a different guideline range was appropriate. *Ibid.* Here, the Guidelines provide a base level of 14 for possession of 25 grams or more of cocaine, and a base level of 12 for possession of less than 25 grams of cocaine. *See* U.S.S.G. § 2D1.1(c)(13), (14). When the base offense level is reduced by two levels for acceptance of responsibility, the question is whether, under the facts in the present record, the sentencing range could be moved from a net level 12, which yields a 21-to-27-month sentence range (given the defendant's criminal history category of IV), to a net level 10, and its 15-to-21-month sentencing range.

The defendant asserted in his statement that he used about two grams of the eight grams of cocaine that he had purchased most recently. Analysis showed that 6.8 grams remained of that eight grams. Given that approximately one-half of the week had passed, and that 1.2 grams thus can be assumed to be the defendant's average usage for that period, that would result in a minimum discount, over five weeks, of 1.2 times two, times five weeks, or twelve grams. Because 35.4375 grams minus twelve grams results in 23.4375 grams, crediting the defendant's unrebutted testimony would result in a 15-to-21-month sentencing range.

We agree with the Tenth Circuit that the defendant bears the burden of production with respect to his personal use of the drug in question. *See United States v. Asch*, 207 F.3d 1238, 1246 (10th Cir. 2000). "Evidence, including personal testimony, of actual consumption of specific quantities would be probative of such an intent." *Ibid. See also Wyss*, 147 F.3d at 633 (noting that the defendant has "some burden of producing evidence concerning the amount that he consumed – he cannot just say to the government, 'I'm an addict, so prove how much of the cocaine that I bought I kept for my own use rather than to resell.'"). The ultimate burden of persuasion, however, rests upon the government. *Asch*, 207 F.3d at 1246.

The defendant has met his burden, and the evidence of personal use has not been rebutted by the government. Of course, the sentencing court is not obliged to accept the defendant's statement; the determination of the credibility of the evidence offered at a sentencing hearing is the responsibility of the district court. Nonetheless, because the lower court did not properly apply the relevant Sentencing Guidelines provisions, the case must be remanded for resentencing on the present record, since "[t]he government was entitled to only one opportunity to present evidence on this issue." *Wyss*, 147 F.3d at 633.

### III.

The defendant's sentence of 21 months on count one of the indictment charging possession of cocaine with intent to distribute, contrary to 21 U.S.C. § 841(a)(1), is **VACATED**, and the matter is **REMANDED** to the district court for resentencing in accordance with this opinion. The defendant's consecutive sentence of 60 months on count two, for knowingly possessing a firearm in furtherance of a drug trafficking crime, contrary to 18 U.S.C. § 924(c), remains intact.