NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0589n.06

Case No. 21-1186

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Dec 20, 2021 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| JESSE JAMES MONVILLE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | O P I N I O N |
| | ) | |

Before: SILER, COLE, and NALBANDIAN, Circuit Judges.

COLE, Circuit Judge.  In September 2020, Jesse James Monville pleaded guilty to possession with intent to distribute 50 grams or more of methamphetamine.  He was eventually sentenced to 51 months of incarceration with a term of five years of supervised release.  On appeal, Monville claims the district court improperly calculated his base offense level by double counting a particular quantity of drugs in his possession and considering pre-indictment conduct that was not relevant to his charged offense.  Finding no error, we affirm.

I.

Monville began selling methamphetamine, cocaine, and other controlled substances in 2017.  Law enforcement launched an investigation of Monville in 2018, and in October 2019 police arranged a controlled buy of crystal methamphetamine and cocaine through a confidential informant.  The same informant completed another purchase later that month.  A few weeks later,

in November 2019, the informant attempted a third controlled buy of 1.5 ounces—roughly 42.52 grams—of crystal methamphetamine, but failed because Monville refused to complete the transaction. Law enforcement arrested Monville for distributing crystal methamphetamine and cocaine about six weeks later. Following his arrest, investigators found 84.63 grams of methamphetamine and 25.28 grams of heroin in his vehicle.

Monville was federally indicted on six counts in January 2020. Pursuant to a plea agreement, Monville pleaded guilty to count five of the indictment—possession with intent to distribute 50 grams or more of methamphetamine—in exchange for dismissal of the remaining counts.

The probation officer's presentence investigation report ("PSR") recommended that Monville be held accountable for drug quantities from multiple drug sales, including sales from November 2017 and mid-2019, the completed controlled buys in October 2019, the attempted controlled buy in November 2019, and the amount seized during the search of his vehicle following his arrest. Monville objected to this calculation on two grounds. First, he claimed that it was improper to include the drugs from the failed November 2019 controlled buy because they were among those found in his vehicle in December 2019. In Monville's view, considering those drugs independently amounted to impermissible double counting. He also objected to including any drug quantities pre-dating the indictment period, such as those derived from sales alleged to have occurred in late 2017 and mid-2019. He argued that this conduct was not "relevant" to the charged offense.

In response, the government explained it was highly unlikely that the drugs from the November 2019 attempted buy were still in Monville's possession in December 2019 because his "historical drug trafficking activities," the "frequency of [his customer's] purchases," and his self-

described drug use suggested they had been sold or consumed by Monville himself. (Sentencing Mem., R. 48, 202–03.) The government also defended the probation officer's reliance on the pre-indictment drug sales, asserting they were "relevant" under the Sentencing Guidelines because the transactions were sufficiently similar and regular to merit their consideration.

At sentencing, the district court overruled both of Monville's objections. It reasoned that "[t]he pattern of the defendant's drug dealing" and "[t]he similarity of the transactions" throughout the years "point[ed] towards" finding "an ongoing series of offenses" relevant to his sentencing calculation and summarily concluded the PSR had not double counted the drug quantity. (Sentencing Tr., R. 58, PageID 245, 247.) The court also granted the government's motion for a downward departure, reducing Monville's total offense level to 23 with a criminal history category of II. Ultimately, the court sentenced Monville to a term of 51 months of incarceration, at the low end of the 51- to 63-month advisory guideline range. This appeal followed.

II.

On appeal, Monville claims the district court erred by overruling his objections to the sentencing calculation. We consider each in turn.

First, we consider whether the district court improperly relied on conduct that was not "relevant" to the offense of conviction under the Guidelines. U.S.S.G. § 1B1.3(a)(2). We review the district court's factual findings for clear error, its application of the Guidelines to the facts de novo, and its overall sentencing determination for abuse of discretion. *United States v. Benton*, 957 F.3d 696, 700–01 (6th Cir. 2020).

"In a nutshell, relevant conduct is criminal conduct not necessarily covered by the present indictment or plea that the Guidelines say may nevertheless be considered in computing the defendant's Guidelines offense level." *Id.* at 700 (quoting *United States v. Gill*, 348 F.3d 147, 151

(6th Cir. 2003)). In cases involving drug trafficking, relevant conduct can include either "all acts and omissions . . . that were part of the same course of conduct or [a] common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *see also Benton*, 957 F.3d at 700. For offenses to be "part of a common scheme or plan," they must be "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." *Benton*, 957 F.3d at 701 (internal quotations, emphases, and citations omitted). Offenses are "part of the same course of conduct" when they are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* (internal quotations and citations omitted).

At sentencing, the district court considered Monville's drug transactions from 2017 and mid-2019 to inform the quantity of drugs for which he was responsible. Monville claims this was erroneous because his pre-indictment drug activity was not "part of a common scheme or plan" since it happened months (and even years) before the charged conduct and involved separate buyers purchasing varied quantities in different locations. This argument, however, is belied by our case law. As we stressed in *Benton*, conduct is not unrelated "simply because . . . the purportedly related activity occurs at different times." 957 F.3d at 703. Rather, we have emphasized that the more consistent and similar the offenses are, the less temporal proximity matters to their relevancy. *Id.*; *accord United States v. Phillips*, 516 F.3d 479, 483–85 (6th Cir. 2008).

Take, for example, our decision in *Phillips*. There, we held that despite "a significant time lapse between [three] offenses," the defendant's two past instances of possession of a firearm were relevant under the Guidelines because they were "identical to the offense of conviction." 516 F.3d at 484–85. We relied on *Phillips* in *Benton*, wherein we concluded that the fact that the defendant

trafficked "substances out of the same home, for the same purpose, and with the same tools of the trade" made his past unindicted conduct relevant. 957 F.3d at 703 (citing *Phillips*, 515 F.3d at 484). The same result follows here.

As the district court found, Monville engaged in a "pattern" of drug dealing despite a modest break in time between offenses. (Sentencing Tr., R. 58, PageID 245.) Since 2017, Monville repeatedly dealt methamphetamine to different customers. Though the individual drug quantity in each transaction varied, the majority of these transactions took place on a weekly basis at Monville's home. Finally, as the government stresses, many of these sales involved pre-negotiated amounts packaged by Monville for sale. Thus, the use of the same methodology each time supports a finding that these pre-indictment activities were relevant conduct for the purposes of sentencing, too. *See Benton*, 957 F.3d at 703. For these reasons, we agree with the district court that the similarities between the transactions are indicative of "an ongoing series of offenses" that constitute relevant conduct under the Guidelines. (Sentencing Tr., R. 58, PageID 245.)

Monville's other objection fares no better. A district court's drug-quantity determination is a factual finding that we review for clear error. *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008) (citing *United States v. Sandridge*, 385 F.3d 1032, 1037 (6th Cir. 2004)). The district court may rely on both physical evidence and testimonial evidence to inform its determination. *Id.* It may also consider all uncontested factual allegations contained within the presentence report. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). A district court's drug-quantity calculation "is not clearly erroneous if supported by competent evidence in the record." *Jeross*, 521 F.3d at 570 (internal citation omitted).

Monville argues that the district court double counted the drug quantity from the attempted November 2019 transaction. This contention, however, is undercut by information Monville

provided to law enforcement. Monville admitted to investigators that he was smoking as many as 7 grams of methamphetamine a day leading up to his apprehension in December 2019. At that rate, the 1.5 ounces of methamphetamine that he intended to sell in November 2019—again, about 42.5 grams—would have been consumed by Monville in about a week. That alone supports affirming the district court's drug-quantity calculation. *Jeross*, 521 F.3d at 570. Because we are not "left with the definite and firm conviction" that the district court's drug calculation was mistaken, we affirm. *Id.* at 569.

III.

The district court did not err in overruling Monville's objections to his sentencing calculation. We affirm.