NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0094n.06

No. 22-5371

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 16, 2023
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CHARLES HAYWOOD SMITH,

    Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF
TENNESSEE

OPINION

Before: SUTTON, Chief Judge; CLAY and BUSH, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Charles Smith appeals his sentence of 96 months of imprisonment for distributing and possessing with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). On appeal, Smith claims the district court improperly attributed certain drugs to Smith when calculating his Sentencing Guidelines range. For the reasons set forth below, we **AFFIRM** the district court's judgment.

## BACKGROUND

### Factual Background

Through a confidential source, the Metropolitan Nashville Police Department conducted four controlled buys from Smith between July 17, 2019 and August 19, 2019. Through these four controlled buys, officers purchased a total of 3.52 grams of heroin from Smith. Subsequently, based on the controlled purchases, officers obtained a search warrant for Smith's residence.

On August 21, 2019, officers executed the search warrant at Smith's residence. During the search, officers discovered four firearms, including three in Smith's bedroom. Officers also discovered the following suspected controlled substances: 82.08 grams of methamphetamine; 3.29 grams of heroin/fentanyl; 4.2 grams of heroin; a total of 3.6 grams of powder cocaine, which included 2.3 grams found in Smith's dresser and 1.3 grams found in the center console of Smith's vehicle; 2.5 grams of crack cocaine wrapped in foil in the bathroom; and 1.1 grams of marijuana. Officers also discovered 360 dollars in small denominational bills in Smith's bedroom, a black digital scale inside the center console of Smith's vehicle, and a digital scale in the bathroom.

While officers conducted the search, Smith was present, as were three other individuals: Sandy Anderson (Smith's mother), Charles Anderson (Smith's stepfather), and Kreaja Spicer (Smith's child's mother). Based on the discovery of controlled substances, officers issued citations for simple possession to the three other individuals. Officers cited Kreaja Spicer for possession of the 1.3 grams of powder cocaine found inside Smith's vehicle, Charles Anderson for possession of the 2.5 grams of crack cocaine found in the bathroom, and Sandy Anderson for possession of the 1.1 grams of marijuana. After being advised of his *Miranda* rights, Smith admitted to the officers conducting the search that "the contraband that was found was his." Police Report, R. 27-1, Page ID #95.

Officers field tested the 82.08 grams of methamphetamine, 3.29 grams of heroin/fentanyl, 3.6 grams of powder cocaine, and 2.5 grams of crack cocaine. Subsequently, officers submitted these substances to the Metropolitan Nashville Police Department laboratory for testing. However, the laboratory tested only the methamphetamine and the heroin/fentanyl. The laboratory tests confirmed the presence of heroin/fentanyl but showed that the apparent methamphetamine did not

contain a controlled substance. Officers conducted neither field nor laboratory tests on the 4.2 grams of apparent heroin.

### Procedural Background

A federal grand jury indicted Smith on seven counts. Counts One through Four charge Defendant with knowingly and intentionally distributing and possessing with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). These counts arise from the four controlled buys. Count Five charges Defendant with knowingly and intentionally possessing with the intent to distribute fentanyl and heroin, in violation of 21 U.S.C. § 841(a)(1), based on the heroin/fentanyl discovered at his residence. Count Six charges Defendant with being a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924, based on the firearms discovered at his residence. Count Seven charges Defendant with knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

On August 23, 2021, Defendant pleaded guilty to Counts One through Four. The government agreed to dismiss Counts Five, Six, and Seven. Following Defendant's guilty plea, the district court permitted Defendant to remain on pretrial release. A few months later, officers with the Hendersonville Police Department arrested Smith in possession of 16.5 grams of crack cocaine and 10 grams of marijuana. The district court subsequently ordered Defendant detained.

In preparation for sentencing, the U.S. Probation Office issued a Presentence Investigation Report. The probation officer calculated the total converted drug weight attributable to Defendant based on drugs recovered during the four controlled buys, some of the drugs recovered from the search of Defendant's residence, and the drugs recovered from the post-plea arrest. Specifically, the probation officer included in the calculation the following drugs recovered from execution of the search warrant: the 3.6 grams of powder cocaine; the 2.5 grams of crack cocaine; the 1.1 grams

of marijuana; and the 3.29 grams of heroin/fentanyl. The probation officer omitted from the calculation the 82.08 grams of the substance that field-tested as methamphetamine and the 4.2 grams of apparent heroin that was never tested. Based on the above, the probation officer calculated a total converted drug weight of 80.32 kilograms. Based on this converted drug weight, the probation officer calculated Defendant's base offense level under the Sentencing Guidelines to be 22.

Defendant made two objections to the presentence report. First, Defendant objected to the probation officer's calculation of the base offense level of 22 and contended that the base offense level should instead be 20. Defendant argued that the converted drug weight should not include the 3.6 grams of powder cocaine or the 2.5 grams of crack cocaine because the substances were never tested by the laboratory. Second, Defendant objected to the lack of reduction for acceptance of responsibility.

The district court overruled both of Defendant's objections. First, the district court determined that the probation officer accurately calculated the total converted drug weight in the presentence report because a preponderance of the evidence supported the inclusion of the powder and crack cocaine. The district court based its finding on the positive field tests showing the substances were cocaine, the "officer description" of the substances, the packaging of the substances, and on Defendant's "criminal history of dealing drugs." Sentencing Tr., R. 70, Page ID #275–276. Therefore, based on that converted drug weight, the district court determined the base offense level to be 22. Second, the district court determined that a reduction for acceptance of responsibility was not appropriate because Defendant continued to engage in criminal conduct while on pretrial release.

Using the base offense level of 22, the district court calculated Defendant's sentencing Guidelines range to be 110 to 137 months. The district court varied downward from this range and imposed a sentence of 96 months' imprisonment. Before the conclusion of the sentencing hearing, the sentencing judge asked the parties if they had any objections to the pronounced sentence other than those that had already been raised. Defense counsel responded: "just the objections to the calculations." Sentencing Tr., R. 70, Page ID #314. Defendant timely appealed from the district court's judgment.

## DISCUSSION

"For defendants convicted of drug crimes, the base offense level at sentencing depends upon the amount of drugs involved in the offense." *United States v. Averill*, 636 F. App'x 312, 315 (6th Cir. 2016) (citing U.S.S.G. § 2D1.1(c)); *accord, e.g.*, *United States v. Gill*, 348 F.3d 147, 149 (6th Cir. 2003). This is because, under the advisory sentencing guidelines, a defendant's base offense level is derived from his "relevant conduct," as that term is defined in U.S.S.G. § 1B1.3. Generally, if a sentencing court determines that a defendant's relevant conduct for purposes of sentencing includes drug quantities that are greater than those involved in the offense of conviction, the court may calculate the defendant's base offense level using those higher drug quantities. *See, e.g.*, *Gill*, 348 F.3d at 149 ("A defendant is responsible for all drug quantities that are included within the scope of his 'relevant conduct.'"). Where a defendant is charged with possessing drugs with the intent to distribute them, relevant conduct includes drugs the defendant possessed with the intent to distribute, but not drugs the defendant possessed for personal consumption. *Id.* at 153. "At sentencing, the prosecution bears the burden of proving by a preponderance of the evidence the quantity of drugs involved in an offense." *United States v.*

*Russell*, 595 F.3d 633, 646 (6th Cir. 2010). We review the district court's factual determination of the quantity of drugs involved in an offense for clear error. *Id.*

On appeal, Defendant contends that the district court erred in attributing the crack and powder cocaine to him because there was insufficient evidence to prove that the substances were cocaine. For the first time, Defendant *also* contends that the district court erred because the government did not show that Defendant possessed the crack cocaine, and because the government did not show that Defendant possessed the crack or powder cocaine for distribution rather than for personal consumption. Defendant argues that the sentencing judge's failure to state affirmatively that Defendant possessed the substances for the purpose of distribution rendered the sentencing procedurally inadequate.[1] On review of the record, the district court did not clearly err in determining the drug quantity attributable to Defendant.

I.      **Presence of a Controlled Substance**

Defendant asserts that the district court erred when it attributed the crack and powder cocaine to him because the government failed to show that the substances were cocaine. Defendant argues that the field tests showing the substances to be cocaine were, standing alone, insufficient because field tests are fallible and can produce false positive test results. Further, Defendant argues that the government failed to present sufficient circumstantial evidence to support the district court's finding that the substances were cocaine.

In analyzing whether the district court erred in finding that the substances Defendant possessed were cocaine, this Court's decision in *United States v. Malone*, 846 F. App'x 355, 361

---

[1] In his reply brief, Defendant additionally argues that the district court erred by including the 1.1 grams of marijuana in the total converted drug weight. Defendant forfeited this argument by failing to raise it in his initial brief. *United States v. Johnson*, 440 F.3d 832, 845–846 (6th Cir. 2006). Moreover, Defendant concedes any error was harmless.

(6th Cir. 2021), is instructive. In *Malone*, the district court found that the substance the defendant possessed was cocaine based on:

> (i) a positive field test; (ii) testimony . . . that all five officers on the scene believed the substance was cocaine; (iii) the fact that the powder was packaged in multiple baggies—hidden inside a cigarette box—in a manner characteristic of drug trafficking; (iv) crime-scene photos of the powder, packaging, and field test; (v) the court's factual determination that [the defendant] gave a 'blatantly false' explanation for the powder—that it was a numbing agent for his pulled tooth, despite not being packaged in any commercial packaging—and (vi) the fact that [the defendant] had previously been convicted of drug-trafficking offenses involving cocaine.

*Malone*, 846 F. App'x at 361. The defendant objected to the district court's reliance on the field test because field tests are fallible. *Id.* On review, the Court noted that the government may establish the identity of a drug through "cumulative circumstantial evidence" and need not present scientific identification. *Id.* (citing *United States v. Schrock*, 855 F.2d 327, 334 (6th Cir. 1988)). Accordingly, the Court held that given the positive field test and the other corroborating factors, the evidence sufficiently supported the district court's finding that the substance the defendant possessed was cocaine. *Id.*

In this case, Defendant does not dispute that field tests showed that the substances were cocaine. However, Defendant points to the false positive field test that showed that a substance at the residence was methamphetamine, but which a laboratory test later showed contained no controlled substances. Defendant argues that this provides a specific reason to doubt the field tests used by the Metropolitan Nashville Police Department. However, as Defendant acknowledges, field tests are fallible. The false positive result on one substance does not show that the district could not rely, in part, on the other positive field tests administered on drugs seized during the same search. *See Malone*, 846 F. App'x at 361.

In addition to the field tests, the district court relied on the officer's description of the substance, the substances' packaging, and Defendant's criminal history. Regarding the officer's description of the substances, Defendant argues that this provides scant support for the determination because the record does not show that the officers identified the substances as cocaine for any reason other than the positive field tests, in contrast to *Malone* wherein the government presented testimony regarding how officers identified the controlled substance. *See Malone*, 846 F. App'x at 361. Though testimony about how officers identified the cocaine would have provided more evidence in support of the district court's finding, the description of the substances as cocaine in the police report provides some evidence in support, because it indicates that the authoring officer believed the substance to be cocaine.

Regarding the substances' packaging, Defendant argues that the powder cocaine's packaging in separate bags does not necessarily show that that the substances were packaged for resale rather than personal consumption. Regardless of whether for resale or personal consumption, however, the substances' packaging in baggies supports the district court's finding that they were cocaine. *See Malone*, 846 F. App'x at 361 (holding that the fact that the powder was packaged in multiple baggies in a manner characteristic of drug trafficking supported the district court's determination that the powder was cocaine). As to the crack cocaine's packaging in foil, the government contends that foil is often used as packaging for crack cocaine prepared for distribution, whereas Defendant contends that foil is often used for personal consumption of crack cocaine. Regardless, the foil wrapping supports the district court's finding that the substance within the foil was crack cocaine.

As to Defendant's criminal history, Defendant argues that it does not support the district court's finding that the substances were cocaine. Defendant points out he had only one conviction

for drug trafficking, which was for marijuana, not cocaine. Defendant also notes he had nine simple possession or casual exchange convictions, eight involving marijuana and only one involving cocaine. However, though Defendant only had one prior conviction involving cocaine, his history of drug-related arrests and convictions combined with his recent participation in four controlled buy drug deals, and his arrest in possession of crack cocaine and marijuana while on pretrial release, provides some evidence that the substances obtained from his residence and vehicle were also controlled substances.

Considering the positive field tests for cocaine and the other corroborating factors, including the officer's description of the substances as cocaine in the police report, the packaging of the substances in baggies and foil, and Defendant's criminal history, the district court did not clearly err in finding that the substances Defendant possessed were cocaine.[2] Resisting this conclusion, Defendant argues that the district court should have considered that Defendant was "liable to possess substances that might mimic a controlled substance" based on Defendant's possession of a substance that appeared to be—but was not—methamphetamine. The possibility that Defendant was selling fake drugs, suggested by the false positive field test result on the apparent methamphetamine, does not rise to the level of creating in this Court a "definite and firm conviction" that the district court erred, when compared to the evidence in the record supporting the district court's finding.

## II.    Other Arguments

On appeal, Defendant raises two new arguments in support of his contention that the district court erred in attributing the crack and powder cocaine to him. First, Defendant argues that the

---

[2] Defendant also argues that the government wrongly asserted to the district court that firearms were "readily accessible" to defend the cocaine, as two of the three substances were not found in proximity to a firearm. However, the district court did not rely on the substances' proximity to firearms in finding the substances were cocaine.

district court erred in including the crack cocaine in the converted drug weight because the government did not establish that Defendant possessed the crack cocaine. Second, Defendant argues that the district court erred because the government did not establish that Defendant possessed either the crack or powder cocaine with the intent to distribute it. Since Defendant makes both these arguments for the first time on appeal, we review for plain error. *United States v. Southers*, 866 F.3d 364, 366 (6th Cir. 2017); *see also* Fed. R. Crim. P. 52(b). To succeed on plain-error review, Defendant must establish (1) there was an error (2) that was "clear or obvious" and (3) that affected his "substantial rights." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

### 1. Possession

First, Defendant contends that he did not possess the crack cocaine. Defendant points to the citation for possession of the 2.5 grams of crack cocaine issued to another individual at the residence, Charles Anderson, and argues that this shows that the crack cocaine belonged to Anderson, and not to Defendant. However, Defendant points to no authority suggesting that only one person may be held responsible for a quantity of drugs. The citation issued to Charles Anderson, alone, does not compel a conclusion contrary to the district court's finding that the crack cocaine was attributable to Defendant. Considering Defendant's post-*Miranda* statement that the contraband at the residence was his, and Defendant's possession of a large quantity of crack cocaine when he was arrested while on pretrial release, the district court did not plainly err in attributing the crack cocaine to Defendant.

In addition, Defendant argues that the district court erred by not explicitly finding that Defendant possessed the crack cocaine. However, absent an objection, "a sentencing court may rely on undisputed facts that are recited in a presentence report to conclude that the defendant committed acts offered as relevant conduct." *United States v. Shafer,* 199 F.3d 826, 830 n. 1 (6th

Cir. 1999); *see also* Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court may accept any undisputed portion of the presentence report as a finding of fact."). Defendant did not object to the inclusion of the crack cocaine in the total converted drug weight in the presentence report on the ground that Defendant did not possess the crack cocaine. Accordingly, the district court did not err by accepting the inclusion of the crack cocaine in the total converted drug weight, as set forth in the presentence report, and not specifically ruling on the possession issue.

### 2. Intent to Distribute

Second, in the alternative, Defendant argues that the district court erred in attributing the crack and powder cocaine to him because he possessed the cocaine for personal consumption rather than for distribution. A defendant bears the burden of production with respect to his personal use of the drug in question. *Gill*, 348 F.3d at 156. The government must then rebut the evidence of personal use, as the government bears the ultimate burden of persuasion. *Id.* Defendant did not make this argument before the district court and did not produce any evidence to show that he possessed the cocaine for personal use. Even looking past this procedural hurdle, Defendant has not shown that the district court erred in attributing the cocaine to Defendant.

In support of his argument, Defendant notes that officers issued a citation to Anderson for simple possession, and not distribution, of the 2.5 grams of crack cocaine. Defendant's contention that there is no evidence that Anderson possessed the crack cocaine for distribution is immaterial. As determined above, the district court did not err in attributing the crack cocaine to Defendant, despite the citation issued to Anderson. Accordingly, the relevant question is whether Defendant possessed the crack cocaine for personal consumption.

On that question, Defendant argues that the crack cocaine's wrapping in foil indicated it was for personal consumption, as Defendant asserts that placing crack cocaine in foil is a common

method for smoking it. Regarding the powder cocaine, Defendant contends that the 2.3 grams of powder cocaine in the dresser and the 1.3 grams in the vehicle were possessed for personal consumption and not for distribution. Defendant notes that the quantities are small. Further, Defendant notes that officers cited another individual in the residence, Kreaja Spicer, for possession of the powder cocaine in the vehicle. Based on these facts, Defendant argues that the two quantities of powder cocaine were his and Spicer's respective stashes of drugs for personal consumption.

However, other evidence supports a finding that Defendant possessed the crack and powder cocaine for distribution. For instance, the bag of powder cocaine in the center console of Defendant's vehicle was found in proximity to a digital scale, which is evidence of distribution. *See United States v. Hampton*, 769 F. App'x 308, 311 (6th Cir. 2019) (holding sufficient evidence supported the finding that the defendant possessed drugs for distribution in part based on the presence of a digital scale in the vehicle with the drugs). In reporting his history of drug use, Defendant reported "sprinkle[ing]" powder cocaine on his marijuana but did not report any use of crack cocaine. PSR, R. 68, ¶ 78, Page ID #247. Finally, during his post-plea arrest, Defendant possessed a large quantity of crack cocaine.

With no evidence of personal consumption presented by Defendant, and other evidence that supported a finding that Defendant possessed the cocaine for distribution, the district court did not plainly err by attributing the cocaine to Defendant. Further, as Defendant did not object on this ground, the district court did not err in not ruling on the issue but instead accepting the inclusion of the cocaine in the total converted drug weight, as set forth in the presentence report. *Shafer,* 199 F.3d at 830 n. 1.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's judgment.